AUTUMN M. ELLIOTT (SBN 230043)
autumn.elliott@disabilityrightsca.org
MELINDA BIRD (SBN 102236)
melinda.bird@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
350 South Bixel Street, Suite 290
Los Angeles, CA 90017
Telephone: (213) 213-8000
Fax: (213) 213-8001

STUART SEABORN (SBN 198590)
sseaborn@dralegal.org
REBECCA S. WILLIFORD (SBN 269977)
rwilliford@dralegal.org
DISABILITY RIGHTS ADVOCATES
2001 Center Street, 4th Floor
Berkeley, CA 94704
Telephone: (510) 665-8644
Fax: (510) 665-8511

*ATTORNEYS FOR PLAINTIFFS*

**[ADDITIONAL COUNSEL LISTED ON NEXT PAGE]**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANSISCO DIVISION

| | |
|---|---|
| WYLENE LENA HINKLE, DENNIS GASSAWAY, MYRA METZ, on behalf of themselves and all others similarly situated, and THE CALIFORNIA COUNCIL OF THE BLIND (a California nonprofit corporation), | Case No.: |
| Plaintiffs, | COMPLAINT |
| v. | CLASS ACTION |
| JENNIFER KENT, in her capacity as Director of California Department of Health Care Services; CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES; CONTRA COSTA COUNTY; COUNTY OF ALAMEDA; COUNTY OF SAN DIEGO; | |
| Defendants. | |

Complaint for Declaratory and Injunctive Relief
*Hinkle, et al. v Kent, et al.*

SILVIA YEE (SBN 222737)
syee@dredf.org
CARLY A. MYERS (SBN 317833)
cmyers@dredf.org
DISABILITY RIGHTS EDUCATION AND DEFENSE FUND
3075 Adeline Street, Suite 210
Berkeley, CA 94703-2578
Telephone: (510) 644-2555
Fax: (510) 841-8645

ELIZABETH ZIRKER (SBN 233487)
Elizabeth.Zirker@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
1330 Broadway, Suite 500
Oakland, CA 94612
Telephone: (510) 267-1263
Facsimile: (510) 267-1201

**[ADDITIONAL COUNSEL LISTED ON CAPTION PAGE]**

## INTRODUCTION

1.      Plaintiffs Wylene Lena Hinkle, Dennis Gassaway, and Myra Metz bring this action on behalf of themselves and all others similarly situated, along with Plaintiff California Council of the Blind, an organization, against Defendants Jennifer Kent (in her capacity as Director of California Department of Health Care Services), Contra Costa County, the County of Alameda, and the County of San Diego (collectively, "Defendants") for Defendants' failure to provide effective communication to blind[1] individuals. This failure denies Plaintiffs and putative class members critically-needed and time-sensitive information about their health benefits, discriminates against them on the basis of their disabilities, and violates their due process rights under the United States Constitution.

2.      Defendants administer the Medi-Cal program, which is a medical assistance program in California for low-income "aged, blind or disabled individuals." 42 U.S.C. § 1396-1. Ms. Hinkle, Mr. Gassaway, Ms. Metz, and other blind individuals throughout the state rely on the Medi-Cal program for access to health care.

3.      Defendants rely on printed materials to provide Medi-Cal applicants and recipients with critical information pertaining to the Medi-Cal program. These printed materials include general information pertaining to individuals' rights and responsibilities with respect to the Medi-Cal program. Defendants also rely on written notices of action regarding eligibility for and changes and reductions to an individual's benefits and services. These notices require prompt action with strict deadlines, which are explained in the written notice. Any delay in receiving, or failure to receive, such information can have serious consequences for a Medi-Cal

---

[1] For semantic convenience throughout this complaint, the term "blind" is used in its broadest sense to include all persons who, under state or federal civil rights laws, have a vision-related disability that requires alternative methods to access hard-copy standard print information.

3

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

1   applicant or recipient, who may be unable to contest the loss of Medi-Cal

2   eligibility, the denial or reduction of critically needed health benefits, or the

3   imposition of a "share of cost," the amount that an individual must spend out of

4   pocket on medical care before Medi-Cal will pay for any covered service. Delays in

5   receiving such information can also result in recipients being denied the right to

6   continue receiving treatments or services needed to stay healthy while any appeal

7   of a denial or reduction of benefits is pending.

8       4.    Ms. Hinkle, Mr. Gassaway, Ms. Metz, and others similarly situated are

9   blind and cannot read the notices that Defendants send them. When Defendants

10   have sent them printed correspondence in the mail, they have no way to know the

11   content on their own, or even that the correspondence concerns their Medi-Cal

12   benefits. As a result, each of them has repeatedly requested that all correspondence

13   from Medi-Cal be in an "alternative format" that would make such information

14   accessible to them.

15       5.    Under federal and state law, people have the right to be free from

16   discrimination on the basis of disability. Title II of the Americans with Disabilities

17   Act of 1990 ("ADA") (42 U.S.C. § 12131, *et seq.*); Section 504 of the

18   Rehabilitation Act of 1973 (29 U.S.C. § 794); Section 1557 of the Affordable Care

19   Act ("ACA") (42 U.S.C. § 18116); California Disabled Persons Act ("DPA"), Cal.

20   Civ. Code § 54, *et seq.*

21       6.    For people who are blind, that includes the right to receive

22   communication that is as effective as Defendants' communication with others. 28

23   C.F.R. §§ 35.160, 39.160. Entities such as DHCS must "give primary consideration

24   to the requests of individuals with disabilities" in determining what types of

25   auxiliary aids and services will provide effective communication. 28 C.F.R. §

26   35.160(b)(2).

27       7.    Furthermore, under the Due Process Clause of the U.S. Constitution,

28   people are entitled to adequate notice of and opportunity for a pre-termination or

4

pre-reduction hearing regarding any termination or reduction in benefits. *Goldberg v. Kelly*, 397 U.S. 254 (1970).

8.    Despite Plaintiffs' requests, Ms. Hinkle, Mr. Gassaway, and Ms. Metz continue to receive standard print Medi-Cal notices that they cannot read. Defendants have never communicated with Mr. Gassaway and Ms. Metz via the alternative format that they have requested. DHCS has only sent Brailled materials to Ms. Hinkle after significant delay, and only in response to specific requests from Ms. Hinkle's lawyers each time Ms. Hinkle received a standard print document.

9.    The California Council for the Blind has likewise repeatedly advocated on behalf of its constituents to request that Defendants adequately identify and track people who need alternative, accessible formats and to respond appropriately to requests for alternative, accessible formats. Nonetheless, Defendants' policies and practices fail to do so, in violation of the laws requiring effective communication and due process regarding these important health care benefits.

## JURISDICTION

10.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 and has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. §1367. The Court has jurisdiction to issue declaratory and injunctive relief under 28 U.S.C. §§ 2201, 2202.

## VENUE AND INTRADISTRICT ASSIGNMENT

11.    Venue is proper in the Northern District of California because Plaintiffs Myra Metz and Dennis Gassaway reside within this District; Plaintiff CCB has many members who reside within this District; Defendants Jennifer Kent (in her capacity as Director of California Department of Health Care Services), the Department of Health Care Services, Contra Costa County, and the County of Alameda operate and perform official duties in this District, and a substantial part of the events, acts, and omissions giving rise to the claims occurred in the Northern

5

1  District of California.

2      12.     Because Plaintiff Myra Metz resides in Contra Costa County and a

3  substantial part of the events, acts, and omissions giving rise to the claims occurred

4  in Contra Costa County, and because Plaintiff Dennis Gassaway resides in the

5  County of Alameda and a substantial part of the events, acts, and omissions giving

6  rise to the claims occurred in the County of Alameda, this case should be assigned

7  to the San Francisco Division or the Oakland Division of this Court pursuant to

8  Local Rule 3-2(d).

9                                **PARTIES**

10  **Plaintiffs**

11      13.     Plaintiff Wylene Lena Hinkle is blind and a recipient of Medi-Cal

12  benefits. She is thus a "qualified person with a disability" and a person with "a

13  disability" within the meaning of all applicable statutes and regulations, including

14  42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B), and California

15  Government Code § 12926. She resides in San Diego, California.

16      14.     Plaintiff Dennis Gassaway is blind and a recipient of Medi-Cal

17  benefits. He is thus a "qualified person with a disability" and a person with "a

18  disability" within the meaning of all applicable statutes and regulations, including

19  42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B), and California

20  Government Code § 12926. He resides in Union City, California.

21      15.     Plaintiff Myra Metz is blind and a recipient of Medi-Cal benefits. She

22  is thus a "qualified person with a disability" and a person with "a disability" within

23  the meaning of all applicable statutes and regulations, including 42 U.S.C. §

24  12131(2), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B), and California Government

25  Code § 12926. She resides in Antioch, California.

26      16.     The California Council of the Blind is a non-profit corporation duly

27  organized under the laws of California with chapters and affiliates throughout the

28  state of California. It is the California affiliate of the American Council of the

6

Blind, and its membership consists of blind individuals residing in California. The California Council of the Blind's mission is to gain full independence and equality of opportunity for all blind Californians and it is committed to promoting the rights, needs, interests, and concerns of all Californians who are blind, and to providing information and referrals, technical assistance, and advocacy. The California Council of the Blind has hundreds of members throughout the state of California.

**Defendants**

17.     Defendant Department of Health Care Services ("DHCS") is the single state agency responsible for administering California's Medicaid program, which is called "Medi-Cal."

18.     Defendant Jennifer Kent is the current DHCS Director. She is sued only in her official capacity. Director Kent is responsible for directing, organizing, and administering DHCS's programs. Her responsibilities in this role include the responsibility to ensure DHCS's compliance with federal and state laws.

19.     DHCS delegates some of the administration of the Medi-Cal program to local welfare offices in each county in California. These include, but are not limited to, local welfare offices operated by Defendant Contra Costa County, Defendant County of Alameda, and Defendant County of San Diego.

20.     At all relevant times, the DHCS is and has been a public entity within the meaning of Title II of the ADA. 42 U.S.C. § 12131.

21.     At all relevant times, DHCS has received and continues to receive federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794.

22.     At all relevant times, DHCS has received and continues to receive state financial assistance within the meaning of California Government Code § 11135.

23.     At all relevant times, Contra Costa County is and has been a public entity within the meaning of Title II of the ADA. 42 U.S.C. § 12131.

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

24.     At all relevant times, Contra Costa County has received and continues to receive federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794.

25.     At all relevant times, Contra Costa County has received and continues to receive state financial assistance within the meaning of California Government Code § 11135.

26.     Along with DHCS, Contra Costa County is responsible for administering the Medi-Cal program and communicating with Medi-Cal beneficiaries and applicants within its boundaries.

27.     At all relevant times, the County of Alameda is and has been a public entity within the meaning of Title II of the ADA. 42 U.S.C. § 12131.

28.     At all relevant times, the County of Alameda has received and continues to receive federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794.

29.     At all relevant times, the County of Alameda has received and continues to receive state financial assistance within the meaning of California Government Code § 11135.

30.     Along with DHCS, the County of Alameda is responsible for administering the Medi-Cal program and communicating with beneficiaries and applicants within its boundaries.

31.     At all relevant times, the County of San Diego is and has been a public entity within the meaning of Title II of the ADA. 42 U.S.C. § 12131.

32.     At all relevant times, the County of San Diego has received and continues to receive federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794.

33.     Along with DHCS, the County of San Diego is responsible for administering the Medi-Cal program and communicating with beneficiaries and applicants within its boundaries.

34.     At all relevant times, the County of San Diego has received and continues to receive state financial assistance within the meaning of California Government Code § 11135.

## CLASS ACTION ALLEGATIONS

35.     Plaintiffs bring this action as a statewide class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2) on behalf of:

> Residents of the State of California who, due to a vision-related disability, need written materials in alternative formats for effective communication regarding Medi-Cal as applicants or beneficiaries ("the Class").

36.     The Class is so numerous that joinder of all persons is impracticable. On information and belief, at least 12,000 enrolled Medi-Cal recipients are blind.[2]

37.     The actual number is likely to be far greater, since people may be deemed eligible for Medi-Cal on the basis of blindness and because people in the low-income population targeted by the Medi-Cal program are more likely than the general population to have a disability, including blindness.

38.     Class members have limited financial resources, as Medi-Cal eligibility is limited to low-income adults, children, pregnant women, elderly adults, and people with disabilities. They are unlikely to institute individual actions.

39.     The claims of Plaintiffs and Class members raise common questions

---

[2] Over 13 million people have been certified as eligible for Medi-Cal services in the State of California. Medi-Cal at a Glance, California Department of Health Care Services (May 2018), https://www.dhcs.ca.gov/dataandstats/statistics/Documents/Medi-Cal_at_a_Glance_May2018_ADA.pdf (last visited October 3, 2018). The overall national rate of blindness is .9% according to the National Eye Institute, an institute of the U.S. National Institute of Health. 2010 U.S. Age-Specific Prevalence Rates for Blindness by Age and Race/Ethnicity, available at https://nei.nih.gov/eyedata/blind/tables (last visited October 11, 2018). Applying the .9% figure to 13 million people enrolled in Medi-Cal shows that a minimum of around 12,000 enrolled Medi-Cal recipients are blind.

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

1   of law and fact.

2       40.     The factual questions common to the entire Class include, but are not

3   limited to:

4       a.      Whether Defendants have a system-wide process for determining

5   whether Plaintiffs and other similarly situated individuals need information in

6   alternative formats that are accessible to them;

7       b.      Whether Defendants have adequate policies and procedures in place

8   for consistently over time providing Plaintiffs and other similarly situated

9   individuals with information in their requested alternative format;

10      c.      Whether Defendants have failed to take the necessary steps to allocate

11  responsibility between and among themselves and other responsible entities to

12  coordinate the provision of information to Plaintiffs and other similarly situated

13  individuals in their requested alternative format; and

14      d.      Whether Defendants have taken adequate steps to inform Plaintiffs

15  and other similarly situated individuals of their right to receive information in

16  alternative formats and the process for obtaining information in alternative formats.

17      41.     The legal questions common to Plaintiffs and all Class members

18  include, but are not limited to:

19      a.      Whether the failure of Defendants to ensure effective communication

20  violates the Americans with Disabilities Act;

21      b.      Whether the failure of Defendants to ensure effective communication

22  violates Section 504 of the Rehabilitation Act of 1973;

23      c.      Whether the failure of Defendants to ensure effective communication

24  violates Section 1557 of the Affordable Care Act;

25      d.      Whether the failure of Defendants to ensure effective communication

26  violates California Government Code Section 11135;

27      e.      Whether the failure of Defendants to ensure effective communication

28  violates the California Disabled Persons Act; and

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

f.     Whether the failure of Defendants to ensure effective communication violates constitutional Due Process guarantees.

42.     The individual Plaintiffs' claims are typical of the Class members' claims. Each of the individual Plaintiffs and Class members is blind, resides in California, and needs alternative formats in order to receive effective communication regarding Medi-Cal. None of the Plaintiffs or Class members are receiving effective communication from Defendants.

43.     The individual Plaintiffs are adequate representatives of the Class because they suffer from the same deprivations as the other Class members and have been denied the same rights that they seek to enforce on behalf of the other Class members.

44.     Plaintiffs will fairly and adequately represent the interests of the absent Class members.

45.     Plaintiffs' interest in obtaining injunctive relief for the violations of their rights and privileges are consistent with and not antagonistic to those of any person within the Class.

46.     Plaintiffs' counsel are qualified, experienced, and able to conduct the proposed litigation.

47.     Prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for the party opposing the Class or could be dispositive of the interests of the other members or substantially impair or impede the ability to protect their interests.

48.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy in that:

(a)     A multiplicity of suits with consequent burden on the courts and Defendants should be avoided; and

//

11

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

(b)    It would be virtually impossible for all Class members to intervene as parties-plaintiffs in this action.

49.    Defendants have acted or refused to act, and continue to act or refuse to act, on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief with respect to the Class as a whole.

## FACTS

50.    The Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396w-5, establishes a medical assistance program cooperatively funded by federal and state governments. The purpose of the Medicaid program is to enable states to furnish, as far as practicable, "medical assistance on behalf of . . . aged, blind or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services," and "to help such families and individuals to attain or retain capability for independence or self-care . . . ." 42 U.S.C. § 1396-1.

51.    California has elected to participate in and receive federal funding through the Medicaid program. Its Medicaid program, Medi-Cal, is codified at California Welfare & Institutions Code §§ 14000 *et seq*. with implementing regulations found in 22 California Code of Regulations §§ 51000 *et seq*.

52.    States participating in the Medicaid program must designate a single state agency to administer or supervise the administration of the Medicaid program and ensure the program complies with all relevant laws and regulations. *See* 42 U.S.C. § 1396a(a)(5); *see also* 42 C.F.R. § 431.10 (2013).

53.    Defendant DHCS is the single state agency that administers Medi-Cal. *See* Cal. Welf. & Inst. Code § 14100.1 (providing that participating states must "provide for the establishment or designation of a single State agency to administer or to supervise the administration of the plan"); *see also* Cal. Welf. & Inst. Code § 14154(d) (the "department is responsible for the Medi-Cal program in accordance with state and federal law").

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

54.     DHCS delegates some of the administration of the Medi-Cal program to local county welfare agencies.

55.     For example, people who are interested in receiving Medi-Cal services may contact their local county welfare agency to receive any application.

56.     DHCS sends county welfare agencies All County Welfare Directors Letters (ACWDLs) and Medi-Cal Eligibility Division Information (MEDILs) establishing Medi-Cal policies and procedures used in determining Medi-Cal eligibility.

57.     DHCS, as the state agency responsible for the Medi-Cal program, exercises oversight over local county welfare agencies with respect to the Medi-Cal program.

58.     DHCS communicates directly with recipients of Medi-Cal benefits and services. It also develops state-wide materials for Medi-Cal recipients and potential applicants that are distributed by county welfare agencies. These materials include, among others, notices to recipients regarding their hearing rights and application materials distributed by county welfare agencies to persons interested in applying for Medi-Cal.

59.     Local county welfare agencies develop additional printed materials that are distributed to Medi-Cal applicants and/or recipients pertaining to the Medi-Cal program.

60.     In addition, DHCS and county welfare agencies have regulatory responsibility and authority to cooperate with the Board of the Covered California Health Benefit Exchange in developing and maintaining a single streamlined application that individuals can use to apply for both Medi-Cal as well as private insurance through the Exchange. The Exchange informs consumers about the Medi-Cal program, receives and sorts the single streamlined application, and works with DHCS to ensure consistent eligibility and enrollment processes and seamless transitions between coverage. Cal. Gov't. Code §§ 100502, 100503, 100503.2; Cal.

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

1 │ Code of Reg., Title 10, Ch. 12, § 6400 *et.seq.*

2 │     61.    DHCS and local counties also disseminate information about the

3 │ Medi-Cal program over the internet via their webpages.

4 │     62.    Some of the information that Defendants disseminate in printed form

5 │ includes information pertaining to eligibility for benefits, information pertaining to

6 │ changes in or reductions to benefits and services as well as information pertaining

7 │ to the applicants' or recipients' responsibilities with respect to the Medi-Cal

8 │ program, including actions they need to take to maintain eligibility for benefits or

9 │ services.

10 │     63.    Defendants have no effective procedure, practice, or custom of

11 │ providing application forms, instructions, notices, informational materials, fair-

12 │ hearing related materials, or other printed materials to blind individuals in formats

13 │ that are accessible to them, even if the individual is known to Defendants to be

14 │ blind, and even if the individual qualifies for benefits based on blindness.

15 │     64.    Defendants do not contact blind individuals by telephone, email, or

16 │ other means when they mail written materials to them to inform them that a

17 │ government agency has mailed them information about their Medi-Cal benefits.

18 │     65.    The only notice that blind applicants and recipients possess about the

19 │ existence and content of mailed Medi-Cal written materials is embodied in

20 │ documents that they cannot read.

21 │     66.    Defendants do not provide blind Medi-Cal recipients with their case

22 │ numbers, the phone number for DHCS or the local county welfare office, and other

23 │ basic information needed to contact the Medi-Cal program in formats that are

24 │ accessible to them.

25 │     67.    Defendants do not adequately inform blind Medi-Cal applicants or

26 │ recipients that they have a right to receive information regarding the Medi-Cal

27 │ program in alternative formats.

28 │     68.    At no step in the Medi-Cal application process are individuals asked

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

whether the applicant needs information in alternative formats or the type of format needed.

69.     Defendants have no effective system for identifying the effective communication needs of anyone who would benefit from alternative formats.

70.     Defendants have no effective system for tracking the effective communication needs of anyone who has made a request for alternative formats.

71.     Defendants have no effective system for communicating regarding individuals' effective communication needs, either among divisions of DHCS, between DHCS and local county welfare offices, between DHCS and the California Department of Social Services (which administers the fair hearing system and hears Medi-Cal adverse benefits determinations), between DHCS and the Covered California Health Benefit Exchange, or between private or government plans providing health care services paid for by Medi-Cal and DHCS and local county welfare offices.

72.     Defendants have no effective system for providing alternative formats in a timely manner.

73.     Defendants have no effective system for automatically distributing materials in alternative formats to people who have made a prior request for such communications.

**Wylene Lena Hinkle**

74.     Wylene Lena Hinkle is blind and hard of hearing.

75.     Ms. Hinkle cannot read standard print materials. She can read Brailled materials.

76.     Ms. Hinkle receives Medi-Cal benefits.

77.     Ms. Hinkle's local county welfare office is the San Diego County Department of Health and Human Services Agency.

78.     Ms. Hinkle has requested to receive materials pertaining to her Medi-Cal benefits in Braille for years.

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

79.     Neither the California Department of Health Care Services nor the San Diego County Department of Health and Human Services Agency have provided her automatic or timely written materials in Braille.

80.     In June 2016, Disability Rights California ("DRC") sent the Department of Health Care Services the first of many written requests on behalf of Ms. Hinkle to receive materials pertaining to her Medi-Cal benefits in Braille.

81.     DHCS has promised a number of times to comply with Ms. Hinkle's request.

82.     In practice, however, DHCS has sent Ms. Hinkle Brailled documents only after significant delay.

83.     DHCS has also only sent Ms. Hinkle Brailled documents in response to specific requests from DRC after Ms. Hinkle receives a standard print document.

84.     For instance, Ms. Hinkle received a document in print on December 8, 2016 certifying that she had minimum essential coverage.

85.     She did not receive a Brailled version of the document until August 15, 2017.

86.     Fifteen days later, DHCS sent her a notice regarding her fair hearing rights – in standard print format.

87.     DRC's most recent request on behalf of Ms. Hinkle for a Brailled version of notices that DHCS sent to her in print was in May 2018.

88.     DHCS made counter-proposals to send Ms. Hinkle notices via screen reader or audio files or to read them to her over the telephone. These counter-proposals ignored the fact that Ms. Hinkle is hard of hearing, and that DHCS had been repeatedly informed of this.

89.     In correspondence with DRC, a DHCS official stated on October 6, 2017 that "there is no way to ensure that every mailing automatically is converted to Braille before it is sent." The official confirmed again on February 15, 2018 that the Department has "not been able to automatically convert general mass mailings

16

to Braille yet."

**Dennis Gassaway**

90.    Dennis Gassaway is blind.

91.    Mr. Gassaway cannot read standard print materials. He can understand materials that are read to him.

92.    Mr. Gassaway receives Medi-Cal benefits.

93.    Mr. Gassaway's local county welfare office is the Alameda County Social Services Agency.

94.    Mr. Gassaway has requested that Defendants read materials pertaining to his Medi-Cal benefits to him instead of sending them in standard print by mail.

95.    Neither the California Department of Health Care Services nor the Alameda County Social Services Agency have called him to read materials to him.

96.    In July 2013, a supervisor in the Alameda County Social Services Agency agreed to contact Mr. Gassaway by phone each time that written notices were sent regarding Medi-Cal, and to read those notices to him.

97.    The Alameda County Social Services Agency made that commitment in response to repeated requests made by an advocate at Disability Rights California on behalf of Mr. Gassaway.

98.    In September 2016, a supervisor in the Alameda County Social Services Agency agreed to contact Mr. Gassaway by phone each time that written notices were sent regarding Medi-Cal, and to read those notices to him.

99.    The Alameda County Social Services Agency again made that commitment in response to a request made by an advocate at DRC on behalf of Mr. Gassaway.

100.    Despite both of those commitments, no one from either the Alameda County Social Services Office or from DHCS has called Mr. Gassaway to read him a notice regarding Medi-Cal.

**Myra Metz**

17

1     101.   Myra Metz is blind and has significant hearing loss.

2     102.   Ms. Metz cannot read standard print materials. She can read Brailled

3 materials.

4     103.   Ms. Metz receives Medi-Cal benefits.

5     104.   Ms. Metz's local county welfare office is the Contra Costa County

6 Employment and Human Services Department.

7     105.   Ms. Metz has requested to receive materials pertaining to her Medi-

8 Cal benefits in Braille for years.

9     106.   Neither the California Department of Health Care Services nor the

10 Contra Costa Employment and Human Services Department have provided her

11 automatic or timely written materials in Braille.

12 **California Council of the Blind**

13     107.   Plaintiff CCB is a nonprofit corporation and a membership association

14 of blind Californians. It is the California state affiliate of the American Council of

15 the Blind. CCB's mission is to increase the independence, security, equality of

16 opportunity, and quality of life for all Californians who are blind or visually-

17 impaired. CCB seeks to ensure that culture, laws, programs, and attitudes are

18 inclusive of persons who are blind or visually-impaired. Access to fundamental

19 healthcare benefits such as Medi-Cal is critical to CCB and its members. Securing

20 access to Medi-Cal services advances CCB's goal to promote integration of the

21 blind into society on a basis of equality by enabling blind individuals to have basic

22 access to healthcare benefits in the same way that many sighted individuals do.

23 CCB sues on behalf of itself and its members.

24     108.   As a result of Defendants' actions, CCB and at least one of its

25 members have been directly and substantially injured. For example, Defendants

26 have never provided effective communication to CCB member Warren Cushman

27 who has been a Medi-Cal recipient for more than thirty years. Mr. Cushman needs

28 notices in a format that is accessible by screen-reading software or Braille.

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

109.   Defendants' actions have also frustrated CCB's mission and forced it to dedicate additional resources to address harms these actions have caused CCB's constituents. For instance, for more than a decade, blind Californians have contacted CCB because they did not receive Medi-Cal materials in accessible formats. Typically, CCB's office administrator has referred those calls to the nearest CCB chapter president or another officer within the organization to educate that individual about their rights to effective communication and try to assist them in obtaining accessible materials. CCB also met with Toby Douglas, past director of DHCS, and sent a letter to the United States Department of Justice regarding the barriers that blind Californians face in trying to get effective communication from Medi-Cal.

110.   Additionally, CCB member and past president Jeff Thom participated on a task force that DHCS convened in 2012 or 2013 regarding effective communication of Medi-Cal materials. CCB provided a memorandum to DHCS describing best practices in effective communication and contributed to some of the task force's overall recommendations. However, the task force facilitator left DHCS before the task force completed its mission and CCB is not aware of any tangible improvements that occurred as a result.

111.   On April 13, 2014, CCB passed a resolution requesting that programs such as Medi-Cal provide accessible written communications to program applicants and recipients with visual impairments be in a format that can be read by such individuals. Though DHCS wrote CCB on December 12, seeking its assistance and expertise regarding providing effective communication to blind individuals, DHCS failed to respond after CCB affirmatively offered its services to DHCS.

112.   Until remedied, the Defendants' unlawful, discriminatory actions will continue to injure the California Council of the Blind by:

    a.   Interfering with efforts and programs intended to bring about equality of access to health care and other crucial services;

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

b.  Requiring the commitment of scarce resources, including substantial time and funding, to address and counteract the Defendants' discriminatory conduct, thus diverting those resources from the California Council of the Blind's other activities and services, such as education, outreach, and other advocacy; and

c.  Frustrating the mission and purpose of the California Council of the Blind.

## FIRST CLAIM FOR RELIEF

**(Against Defendants Kent, County of Alameda, County of San Diego, and Contra Costa County)**

**Title II of the Americans with Disabilities Act**

**42 U.S.C. § 12131 *et seq*.**

113.   Plaintiffs reallege and incorporate by reference the allegations above as if fully set forth here.

114.   Title II of the ADA provides in relevant part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132; *see also* 28 C.F.R. §§ 35.130(a), (b)(1).

115.   The California Department of Health Care Services has been and is a "public entity" within the meaning of Title II of the ADA, and Jennifer Kent is the principal executive of that public entity. 42 U.S.C. § 12131.

116.   Defendant Contra Costa County has been and is a public entity within the meaning of Title II of the ADA. 42 U.S.C. § 12131(1).

117.   Defendant County of Alameda has been and is a public entity within the meaning of Title II of the ADA. 42 U.S.C. § 12131(1).

118.   Defendant County of San Diego has been and is a public entity within the meaning of Title II of the ADA. 42 U.S.C. § 12131(1).

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

119.   The individual Plaintiffs and Class members have been and are qualified individuals with a disability within the meaning of Title II of the ADA and meet the essential eligibility requirements for the receipt of and/or application for the services, programs, or activities of Defendants. 42 U.S.C. § 12131.

120.   Medi-Cal and all of its benefits, activities, and services are a program, service, or activity that Defendants offer within the meaning of Title II.

121.   Public entities, including Defendants, are prohibited from excluding individuals with disabilities from participation in or denying the benefits of their services, programs, or activities on the basis of disability or otherwise subjecting them to discrimination. 28 C.F.R. § 35.130(a).

122.   Public entities, including Defendants, are prohibited from affording a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others, either directly or through contractual, licensing, or other arrangements. 28 C.F.R. § 35.130(b)(ii).

123.   Public entities, including Defendants, "may not . . . utilize criteria or methods of administration— (i) That have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination; or (ii) That have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the service, program, or activity with respect to individuals with disabilities; or (iii) That perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State." 28 C.F.R. § 35.130(b)(3).

124.   Public entities, including Defendants, "shall make reasonable modifications in policies, practices or procedures when the modifications are necessary to avoid discrimination on the basis of disability . . . ." 28 C.F.R. § 35.130(b)(7).

125.   Public entities, including Defendants, must take "appropriate steps to ensure that communications with applicants, participants, members of the public,

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

1  and companions with disabilities are as effective as communications with others."

2  28 C.F.R. § 35.160(a).

3       126.   Public entities, including Defendants, must "furnish appropriate

4  auxiliary aids and services where necessary to afford individuals with disabilities,

5  including applicants, participants, companions, and members of the public, an

6  equal opportunity to participate in, and enjoy the benefits of, a service, program, or

7  activity of a public entity." 28 C.F.R. § 35.160(b)(1).

8       127.   Federal regulations implementing Title II of the Americans with

9  Disabilities Act provide that "[i]n determining what types of auxiliary aids and

10 services are necessary, a public entity shall give primary consideration to the

11 requests of individuals with disabilities." 28 C.F.R. § 35.160(b)(2).

12      128.   Federal regulations implementing Title II of the Americans with

13 Disabilities Act further provide that "[i]n order to be effective, auxiliary aids and

14 services must be provided in accessible formats, in a timely manner, and in such a

15 way as to protect the privacy and independence of the individual with a disability."

16 28 C.F.R. § 35.160(b)(2).

17      129.   Defendants' actions and omissions discriminate against Plaintiffs on

18 the basis of disability in violation of the ADA. Defendants' discriminatory conduct

19 includes, but is not limited to:

20            a.  Maintaining discriminatory policies and practices;

21            b.  Denying Plaintiffs and Class members the benefits of Defendants'

22               services, programs, and activities pertaining to Medi-Cal;

23            c.  Failing to ensure Plaintiffs and Class members an opportunity to

24               participate in or benefit from Defendants' aids, benefits, or services

25               that is equal to that afforded others, and/or failing to ensure Plaintiffs

26               and Class members an equal opportunity to obtain the same result or

27               to gain the same benefit as that provided to others;

28            d.  Failing to provide reasonable modifications to ensure equal access to

22

Defendants' services, programs, and activities;

e. Using criteria or methods of administration that have the effect of subjecting Plaintiffs and Class members to discrimination on the basis of disability;

f. Failing to take appropriate steps to ensure effective communication to Plaintiffs and Class members;

g. Failing to provide Plaintiffs and Class members appropriate auxiliary aids and services;

h. Failing to ensure that Plaintiffs and Class members receive accessible formats in a timely manner; and

i. Failing to provide Plaintiffs and Class members accessible formats in such a way as to protect their privacy and independence.

130. In committing the acts and/or omissions above, Defendants acted intentionally and with deliberate indifference to Plaintiffs' rights.

131. Defendants' violations of the ADA have harmed and will continue to harm Plaintiffs and Class members in the future.

132. Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

133. Plaintiffs are entitled to declaratory and injunctive relief, as well as reasonable attorneys' fees and costs incurred in bringing this action.

134. Pursuant to the remedies, procedures, and rights set forth in 42 U.S.C. § 12188, Plaintiffs pray for relief as set forth below.

## SECOND CLAIM FOR RELIEF

### (Against All Defendants)

### Section 504 of the Rehabilitation Act

### 29 U.S.C. § 794 *et seq.*

135. Plaintiffs reallege and incorporate by reference the allegations above as if fully set forth here.

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

136.   Section 504 of the Rehabilitation Act of 1973 provides in relevant part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . . ." 29 U.S.C. § 794; *see* 34 C.F.R. §§ 104.4(b), 104.21, 104.43(a).

137.   Defendant Department of Health Care Services has been and is a recipient of federal financial assistance sufficient to invoke the coverage of Section 504, and Jennifer Kent is the principal executive of that entity.

138.   Defendant Contra Costa County has been and is a recipient of federal financial assistance sufficient to invoke the coverage of Section 504.

139.   Defendant County of Alameda has been and is a recipient of federal financial assistance sufficient to invoke the coverage of Section 504.

140.   Defendant County of San Diego has been and is a recipient of federal financial assistance sufficient to invoke the coverage of Section 504.

141.   Individual Plaintiffs and Class members have been and are qualified individuals with a disability within the meaning of Section 504 and are otherwise qualified to participate in, receive benefits from, and/or apply for Defendants' programs or activities pertaining to Medi-Cal. 29 U.S.C. § 794(b).

142.   Medi-Cal is a "program or activity receiving Federal financial assistance" as referred to in 29 U.S.C. §794(a), because it is an operation of the Department of Health Care Services, as well as counties throughout California including but not limited to Contra Costa County, the County of Alameda, and the County of San Diego, which receive Federal financial assistance for Medi-Cal and other programs.

143.   Medi-Cal is also a "program or activity receiving Federal financial assistance" as referred to in 29 U.S.C. §794(a) because each Defendant is "a department, agency, special purpose district, or other instrumentality of a State or

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

local government" and/or "the entity of such State or local government that distributes such assistance" or a "department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government" as referred to in 29 U.S.C. §794(b)(1).

144.   Recipients of Federal financial assistance, including Defendants, are prohibited from denying a qualified person with a disability any health, welfare, or other social services or benefits on the basis of disability. 45 C.F.R. § 84.52(a)(1).

145.   Recipients of Federal financial assistance, including Defendants, are prohibited from affording a qualified individual with a disability an opportunity to receive health, welfare, or other social services or benefits that is not equal to that afforded people without disabilities. 45 C.F.R. § 84.52(a)(2).

146.   Recipients of Federal financial assistance, including Defendants, are prohibited from providing a qualified person with a disability health, welfare, or other social services or benefits that are not as effective as the benefits or services provided to others on the basis of disability. 45 C.F.R. § 84.52(a)(3).

147.   Recipients of Federal financial assistance, including Defendants, are prohibited from providing a qualified person with a disability any health, welfare, or other social services or benefits in a manner that limits or has the effect of limiting the participation of qualified individuals with disabilities. 45 C.F.R. § 84.52(a)(4).

148.   Recipients of Federal financial assistance, including Defendants, must "provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question." 45 C.F.R. § 84.52(d)(1).

149.   Federal regulations provide that "auxiliary aids may include brailled and taped material, interpreters, and other aids for persons with impaired hearing or vision." 45 C.F.R. § 84.52(d)(3).

150.   Defendants' actions and omissions discriminate against Plaintiffs and

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

Class members solely by reason of their disability in violation of Section 504. Defendants' discriminatory conduct includes but is not limited to:

    a.  Maintaining discriminatory policies and practices;

    b.  Excluding Plaintiffs and Class members from participation in and denying Plaintiffs the services and benefits of Medi-Cal programs, services, and activities;

    c.  Failing to ensure that Plaintiffs have an opportunity to participate in or benefit from services or benefits pertaining to Medi-Cal that is equal to and/or as effective as that afforded others;

    d.  Providing services and benefits in a manner that limits or has the effect of limiting the participation of Plaintiffs and Class members in Medi-Cal services and benefits; and

    e.  Failing to provide Plaintiffs and Class members with appropriate auxiliary aids where necessary to afford them an equal opportunity to benefit from the service in question.

151.   In committing the acts and/or omissions above, Defendants acted intentionally and with deliberate indifference to Plaintiffs' rights.

152.   Defendants' violations of Section 504 have harmed and will continue to harm Plaintiffs and Class members in the future.

153.   Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

154.   Plaintiffs are entitled to declaratory and injunctive relief, as well as reasonable attorneys' fees and costs in bringing this action.

155.   Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C. § 794(a), Plaintiffs pray for relief as set forth below.

//

//

//

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

1 | //

2 | ### THIRD CLAIM FOR RELIEF

3 | **(Against All Defendants)**

4 | **Section 1557 of the Affordable Care Act**

5 | **42 U.S.C. § 18116**

6 | 156.   Plaintiffs reallege and incorporates by reference the allegations above

7 | as if fully set forth here.

8 | 157.   Section 1557 of the Affordable Care Act provides in relevant part that

9 | "an individual shall not, on the ground prohibited by . . . Section 504 of the

10 | Rehabilitation Act of 1973 (29 U.S.C. 794) [i.e., disability] be excluded from

11 | participation in, be denied the benefits of, or be subjected to discrimination under,

12 | any health program or activity, any part of which is receiving Federal financial

13 | assistance, including credits, subsidies, or contracts of insurance, or any program or

14 | activity that is administered by an Executive Agency or any entity established

15 | under this title (or amendments)." 42 U.S.C. § 18116(a).

16 | 158.   Medi-Cal is a "health program or activity" as described in 42 U.S.C. §

17 | 18116(a) because it receives, and continues to receive, Federal financial assistance,

18 | including credits, subsidies, or contracts of insurance.

19 | 159.   Defendant Department of Health Care Services administers the state-

20 | wide Medi-Cal program and Defendant Jennifer Kent is the principal executive of

21 | that entity. As a result, these Defendants are prohibited from discriminating on the

22 | basis of disability as described in 42 U.S.C. § 18116.

23 | 160.   Defendants Department of Health Care Services and Jennifer Kent

24 | have delegated a portion of the administration of the Medi-Cal program to

25 | Defendant Contra Costa County. As a result, Contra Costa County is prohibited

26 | from discriminating on the basis of disability as described in 42 U.S.C. § 18116.

27 | 161.   Defendants Department of Health Care Services and Jennifer Kent

28 | have delegated a portion of the administration of the Medi-Cal program to

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

1  Defendant County of San Diego. As a result, the County of San Diego is prohibited
2  from discriminating on the basis of disability as described in 42 U.S.C. § 18116.

3      162.   Defendants Department of Health Care Services and Jennifer Kent
4  have delegated a portion of the administration of the Medi-Cal program to
5  Defendant County of Alameda. As a result, the County of Alameda is prohibited
6  from discriminating on the basis of disability as described in 42 U.S.C. § 18116.

7      163.   Defendants' actions and omissions discriminate against Plaintiffs and
8  Class members solely by reason of their disability in violation of Section 1557 of
9  the Affordable Care Act. Defendants' discriminatory conduct includes but is not
10 limited to:

11     a.   Maintaining discriminatory policies and practices;
12     b.   Excluding Plaintiffs and Class members from participation in and
13        denying Plaintiffs and Class members the benefits of the Medi-Cal
14        program on the basis of disability; and
15     c.   Subjecting Plaintiffs and Class members to discrimination under the
16        Medi-Cal program by failing to provide Plaintiffs and Class members
17        with effective communication.

18     164.   In committing the acts and/or omissions above, Defendants acted
19 intentionally and with deliberate indifference to Plaintiffs' rights.

20     165.   Defendants' violations of Section 1557 of the Affordable Care Act
21 have harmed and will continue to harm Plaintiffs and Class members in the future.

22     166.   Because Defendants' discriminatory conduct is ongoing, declaratory
23 and injunctive relief are appropriate remedies.

24     167.   Plaintiffs are entitled to actual and compensatory damages, declaratory
25 and injunctive relief, as well as reasonable attorneys' fees and costs in bringing this
26 action.

27     168.   Pursuant to the remedies, procedures, and rights referred to in 42
28 U.S.C. § 18116(a), Plaintiffs pray for relief as set forth below.

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

## FOURTH CLAIM FOR RELIEF

### (Against All Defendants)

### California Government Code § 11135

169.   Plaintiffs reallege and incorporates by reference the allegations above as if fully set forth here.

170.   Section 11135(a) of the California Government Code provides in relevant part: "No person in the State of California shall, on the basis of . . . disability, . . . be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

171.   The Medi-Cal program is "a program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

172.   Defendant Department of Health Care Services has been and is a state agency as described in Section 11135(a), and Defendant Jennifer Kent is the principal executive of that state agency.

173.   Defendant Contra Costa County receives direct funding by the state and/or other financial assistance from the state with respect to its administration of the Medi-Cal program sufficient to invoke the coverage of Government Code § 11135 *et seq*. Contra Costa County has received such financial assistance at all times relevant to the claims asserted in this Complaint.

174.   Defendant County of San Diego receives direct funding by the state and/or other financial assistance from the state with respect to its administration of the Medi-Cal program sufficient to invoke the coverage of Government Code § 11135 *et seq*. The County of San Diego has received such financial assistance at all times relevant to the claims asserted in this Complaint.

175.   Defendant County of Alameda receives direct funding by the state

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

and/or other financial assistance from the state with respect to its administration of the Medi-Cal program sufficient to invoke the coverage of Government Code § 11135 *et seq.* The County of Alameda has received such financial assistance at all times relevant to the claims asserted in this Complaint.

176.   California Government Code § 11135(b) incorporates the protections and prohibitions contained in the Americans with Disabilities Act ("ADA") and its implementing regulations. Section 11135(b) states in relevant part:

> With respect to discrimination on the basis of disability, programs and activities subject to subdivision (a) shall meet the protections and prohibitions contained in Section 202 of the federal Americans with Disabilities Act of 1990 (42 U.S.C. Sec. 12132), and the federal rules and regulations adopted in implementation thereof, except that if the laws of this state prescribe stronger protections and prohibitions, the programs and activities subject to subdivision (a) shall be subject to the stronger protections and prohibitions.

177.   For all the reasons described above, Defendants have violated and continue to violate the Americans with Disabilities Act and therefore have violated and continue to violate California Government Code § 11135(b).

178.   Independent of any violation of the Americans with Disabilities Act, Defendants have also violated the terms of California Government Code § 11135(a), which prohibits discrimination on the basis of disability.

179.   Pursuant to California Government Code § 11139, Plaintiffs have a private right of action to enforce California Government Code § 11135(b).

180.   Defendants and their agents and employees have and continue to violate California Government Code § 11135 by unlawfully denying Plaintiffs the benefits of, and unlawfully subjecting Plaintiffs to discrimination under, Defendants' programs and activities for the reasons set forth above.

181.   Defendants have refused and failed to ensure that Plaintiffs and Class members have full and equal access to their programs, services, and activities as required by California Government Code § 11135 *et seq.*

30

182.   Defendants' violations of California Government Code § 11135 have harmed and will continue to harm Plaintiffs and Class members.

183.   Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

184.   Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action. Pursuant to the rights, procedures, and remedies set forth under in California Government Code § 11135 and § 11139, and the California Code of Civil Procedure, Plaintiffs pray for relief as set forth below.

**FIFTH CLAIM FOR RELIEF**

**(Against All Defendants)**

**California Disabled Persons Act**

**California Civil Code § 54 *et seq.***

185.   Plaintiffs reallege and incorporate by reference the allegations above as if fully set forth here.

186.   The California Disabled Persons Act ("DPA") provides that "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of . . . public facilities[] and other public places." Cal. Civ. Code § 54(a); *see also* Cal. Civ. Code § 54.1 (providing that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities . . . [and] places to which the general public is invited . . . ."

187.   The DPA also provides that a violation of the ADA is a violation of the DPA. Cal. Civ. Code §§ 54(c), 54.1(d).

188.   Defendants are entities covered by the DPA.

189.   Defendants have violated the DPA by, among other things, denying and/or interfering with Plaintiffs' rights to full and equal access to Defendants' accommodations, advantages, or facilities.

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

190.   Defendants have also violated the DPA by denying or aiding the denial of Plaintiffs' rights to equal access under California state law and the ADA.

191.   Plaintiffs are entitled to injunctive and declaratory relief and reasonable attorneys' fees and costs incurred in bringing this action.

192.   Pursuant to the remedies, procedures, and rights set forth in California law, Plaintiffs pray for judgment as set forth below.

## SIXTH CLAIM FOR RELIEF

**(Against Defendants Kent, County of Alameda, County of San Diego, and Contra Costa County)**

**Due Process Clause of the Fourteenth Amendment of the United States Constitution**

193.   Plaintiffs reallege and incorporates by reference the allegations above as if fully set forth here.

194.   The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits Defendants from depriving Plaintiffs and other similarly situated individuals of a protected property interest without adequate notice and an opportunity to be heard.

195.   Plaintiffs and similarly situated individuals have a protected property interest in receiving Medi-Cal benefits and services. Defendants routinely issue notices of action in formats that cannot be read by Plaintiffs and Class Members.

196.   Defendants' failure to provide information in accessible formats to Plaintiffs and other similarly situated persons in alternative formats that are effective for them denies Plaintiffs and similarly situated individuals of adequate notice and an opportunity to be timely heard regarding the deprivation of their property, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

//

//

32

## **PRAYER**

WHEREFORE, Plaintiffs request:

197.    That this Court assume jurisdiction.

198.    That this Court certify that this lawsuit may be maintained as a class action under Federal Rule of Civil Procedure 23(a) and 23(b)(2).

199.    That this Court declare all Defendants to be in violation of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794 *et seq.*) and its implementing regulations, Section 1557 of the Affordable Care Act, the California Unruh Civil Rights Act, and California Government Code § 11135 and any implementing regulations that may be promulgated during the pendency of this matter.

200.    That this Court declare Defendants Kent, County of Alameda, County of San Diego, and Contra Costa County to be in violation of Title II of the ADA (42 U.S.C. § 12181 *et seq.*) and its implementing relations and of the Due Process Clause of the United States Constitution.

201.    That this Court issue a preliminary and permanent injunction ordering Defendants to comply with the statutes set forth in this Complaint, including but not limited to ordering Defendants to:

a. Provide, and ensure that their agents and assigns provide, information that is provided in standard print materials to Medi-Cal applicants and recipients to Plaintiffs and other similarly situated individuals in their requested alternative format;

b. In consultation with Plaintiffs, develop a plan that includes any policy changes necessary for a durable remedy. The plan shall ensure the following:

i. Identification of people who will benefit from notices and other critical documents in alternative formats, including by asking applicants about any alternative format preference and by notifying beneficiaries that alternative formats are available

33

1           upon request;

2      ii.   Tracking of people who have requested alternative formats,

3           including their requested method of communication;

4      iii.  Communication among divisions of DHCS, between DHCS and

5           county offices administering the Medi-Cal program, between

6           DHCS and CDSS (which administers the fair hearing system

7           and hears Medi-Cal adverse benefits determinations), between

8           DHCS and the Covered California Health Benefit Exchange,

9           and between DHCS and private or government plans providing

10         health care services paid for by Medi-Cal, regarding the identity

11         of people who have requested alternative formats and the

12         requested method of communication;

13     iv.  Training of relevant staff and other steps necessary to ensure

14         that people receive an adequate response whether they make a

15         request for accessible documents at the state, county, or

16         contractor level;

17      v.  Automatic dispatch of notices in the requested alternative

18         format contemporaneously with the standard notices sent to

19         others;

20     vi.  Availability of frequently-used notices and documents,

21         including application documents, in commonly-requested

22         alternative formats such as Braille;

23    vii.  Electronic and online forms and information readable, fillable,

24         and savable by people using assistive technology;

25   viii.  Appropriate treatment of grievances regarding effective

26         communication; and

27     ix.  Relevant grievance, appeal, and state fair hearing deadlines

28         track from the time when an alternative format is provided, not

34

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

1    the date when the department, a county, or a managed care plan
2    produces a standard print notice.

3    c.   Take any other steps necessary to provide effective communication to
4    Plaintiffs and similarly situated individuals.

5    202.   That this Court award Plaintiffs reasonable attorneys' fees and costs
6    pursuant to federal and California law.

7    203.   That this Court award Plaintiffs such other and further relief as the
8    Court deems to be just, proper, and equitable.

9

10   Dated:  October 22, 2018          Respectfully submitted,

11                                      DISABILITY RIGHTS CALIFORNIA
12
13                                      */s/ Autumn M. Elliott*_____
                                        AUTUMN M. ELLIOTT
14                                      MELINDA BIRD
15                                      ELIZABETH ZIRKER
                                        *Attorneys for Plaintiffs*
16

17

18                                      DISABILITY RIGHTS ADVOCATES
19
20                                      */s/ Stuart Seaborn*_____
                                        STUART SEABORN
21                                      REBECCA S. WILLIFORD
22                                      *Attorneys for Plaintiffs*

23

24                                      DISABILITY RIGHTS EDUCATION AND
25                                      DEFENSE FUND

26                                      */s/ Silvia Yee*_____
27                                      SILVIA YEE
                                        CARLY A. MYERS
28                                      *Attorneys for Plaintiffs*

35

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*

1

## **ATTORNEY ATTESTATION**

2   I hereby attest, pursuant to Local Rule 5-1(i)(3), that I obtained the concurrence in

3   the filing of this document from the signatories indicated by the conformed (/s/) of

4   Stuart Seaborn and Silvia Yee.

5                               */s/ Autumn M. Elliott*

6                               AUTUMN M. ELLIOTT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Declaratory and Injunctive Relief
*HINKLE, et al. v KENT, et al.*