AUTUMN M. ELLIOTT (SBN 230043)
autumn.elliott@disabilityrightsca.org
MELINDA BIRD (SBN 102236)
melinda.bird@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
350 South Bixel Street, Suite 290
Los Angeles, CA 90017
Telephone: (213) 213-8000
Fax: (213) 213-8001

SHAWNA PARKS (SBN 208301)
sparks@dralegal.org
REBECCA S. WILLIFORD (SBN 269977)
rwilliford@dralegal.org
ROSA LEE BICHELL (SBN 331530)
rbichell@dralegal.org
DISABILITY RIGHTS ADVOCATES
2001 Center Street, 3rd Floor
Berkeley, CA 94704
Telephone: (510) 665-8644
Fax: (510) 665-8511

*Attorneys for Plaintiffs*

ADDITIONAL COUNSEL ON NEXT PAGE

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

WYLENE LENA HINKLE, DENNIS GASSAWAY, on behalf of themselves and all others similarly situated, and THE CALIFORNIA COUNCIL OF THE BLIND (a California nonprofit corporation),

Plaintiffs,

v.

MICHELLE BAASS, in her capacity as Director of California Department of Health Care Services; CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES; CONTRA COSTA COUNTY; COUNTY OF ALAMEDA; COUNTY OF SAN DIEGO;

Defendants.

Case No. 3:18-cv-06430-MMC

**JOINT NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

Date:      December 13, 2024
Time:      9:00 a.m.
Place:     Courtroom 7 – 19th Floor
Judge:     Hon. Maxine M. Chesney

SILVIA YEE (SBN 222737)
syee@dredf.org
DISABILITY RIGHTS EDUCATION AND DEFENSE FUND
3075 Adeline Street, Suite 210
Berkeley, CA 94703-2578
Telephone: (510) 644-2555
Fax: (510) 841-8645

ELIZABETH ZIRKER (SBN 233487)
Elizabeth.Zirker@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
1330 Broadway, Suite 500
Oakland, CA 94612
Telephone: (510) 267-1263
Facsimile: (510) 267-1201

*Attorneys for Plaintiffs*

ROB BONTA
Attorney General of California
DANE C. BARCA (SBN 294278)
dane.barca@doj.ca.gov
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3371
Fax: (415) 703-5480

*Attorneys for Defendants Michelle Baass and*
*the California Department of Health Care Services*

G. SCOTT EMBLIDGE (SBN 121613)
emblidge@mosconelaw.com
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 362-3599
Fax: (415) 362-3599

*Attorney for Defendants Contra Costa County,*
*County of Alameda, and County of San Diego*

2

1

**JOINT NOTICE OF MOTION AND MOTION**

2          TO ALL PARTIES and the COURT: PLEASE TAKE NOTICE THAT on December 13,

3 2024 at 9:00 am, or as soon thereafter as can be heard, Plaintiffs Wylene Hinkle, Dennis

4 Gassaway, and the California Council of the Blind (collectively "Plaintiffs"); and Defendants

5 California Department of Health Care Services and its Director Michelle Baass in her official

6 capacity (collectively "DHCS"), Contra Costa County, County of Alameda, and County of San

7 Diego (collectively, the "County Defendants") (together, DHCS and County Defendants are

8 "Defendants") will jointly move the Court for entry of an order: (1) granting preliminary

9 approval of their proposed class-wide settlement agreement, submitted herewith as Ex. 1 to the

10 Declaration of Autumn M. Elliott; (2)  provisionally certifying the proposed Settlement Class

11 and appointing Plaintiffs' attorneys as class counsel, pending final approval; (3) approving the

12 Parties' proposed form of notice and directing notice to the class; and (4) setting deadlines for

13 notice, objections, and a final fairness hearing. The hearing on this motion will take place before

14 United States District Judge Maxine M. Chesney, in Courtroom 7 on the 19th Floor of the San

15 Francisco Courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102.

16          In support of this motion, the Parties state:

17          1.    The Agreement represents a comprehensive settlement of the issues raised in the

18                above-captioned case.

19          2.    The Agreement offers a fair and equitable result to those affected by it.

20          3.    The Agreement will result in significant long-term benefits both for individuals

21                who are members of the proposed settlement class and for Defendants.

22          This motion is based upon this Notice of Motion and Motion, the accompanying

23 Memorandum of Points and Authorities, the concurrently filed declarations and exhibits, all

24 pleadings and papers on file in this action, and any oral argument that may be presented.

25 / / /

26 / / /

27 / / /

28 / / /

*Hinkle, et al. v. Baass et al.*, Case No. 3:18-cv-06430-MMC
Joint Notice of Motion and Motion for Preliminary Approval of Class Settlement

1    The Parties thus respectfully request that the Court grant preliminary approval of the

2  class settlement agreement, conditionally certify the proposed settlement class, direct notice to

3  the proposed Class, and schedule deadlines for objections, a fairness hearing, and a final

4  approval hearing.

5                                                    Respectfully Submitted,

6  Date: <u>November 8, 2024</u>                    DISABILITY RIGHTS CALIFORNIA

7

8                                                    <u>/s/ Autumn M. Elliott</u>
                                                     AUTUMN M. ELLIOTT
9                                                    *Attorneys for Plaintiffs*

10  Date: <u>November 8, 2024</u>                    OFFICE OF THE ATTORNEY GENERAL

11                                                   <u>/s/ Dane C. Barca</u>
                                                     DANE C. BARCA
12                                                   *Attorneys for Defendants Michelle Baass, Director*
                                                     *of the California Department of Health Care*
13                                                   *Services (DHCS) and DHCS*

14

15  Date: <u>November 8, 2024</u>                    MOSCONE EMBLIDGE & RUBENS LLP

16                                                   <u>/s/ G. Scott Emblidge</u>
                                                     G. SCOTT EMBLIDGE
17                                                   *Attorney for Defendants Contra Costa County,*
                                                     *County of Alameda, and County of San Diego*
18

19

20

21

22

23

24

25

26

27

28

*Hinkle, et al. v. Baass et al.*, Case No. 3:18-cv-06430-MMC
Memorandum of Point and Auth. iso Joint Motion for Preliminary Approval of Class Settlement

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 11

II.    FACTUAL BACKGROUND ................................................................................ 12

    A.    Litigation History ..................................................................................... 12

        1.    Commencement of the Action ..................................................... 12

        2.    The Parties Reached the Agreement Through Over Five
             Years of Settlement Negotiations ............................................... 13

    B.    Material Terms of the Proposed Settlement Agreement ........................... 14

        1.    DHCS Commitments .................................................................... 15

        2.    Monitoring Protocol ..................................................................... 19

        3.    County Defendant Commitments .................................................. 20

        4.    Procedural Requirements .............................................................. 21

        5.    Attorneys' Fees ............................................................................ 22

III.    LEGAL STANDARD .......................................................................................... 22

IV.    ARGUMENT ....................................................................................................... 23

    A.    The Proposed Settlement Class Should Be Certified ............................... 23

        1.    The proposed class of over 150,000 consumers is
             sufficiently numerous .................................................................. 23

        2.    Plaintiffs' claims depend on common contentions capable
             of class-wide resolution ............................................................... 24

        3.    Plaintiffs' claims are typical of the Settlement Class. .............................. 26

        4.    Plaintiffs and their Counsel have and will fairly and
             adequately protect the interests of the Class. ............................... 27

        5.    The proposed class meets the requirements of Rule
             23(b)(2). ........................................................................................ 29

    B.    The Court Should Preliminarily Approve the Parties' Agreement ....................... 30

        1.    Plaintiffs and their counsel have adequately represented the
             Settlement Class ........................................................................... 30

        2.    The Parties' Agreement is the product of arms-length
             negotiations. ................................................................................. 31

        3.    The Parties' Agreement will provide exceptional relief to
             Plaintiffs and the Settlement Class ............................................. 32

             a.    The potential costs, risks, and delays associated
                 with trial and appeal weigh in favor of approval. .......................... 33

*Hinkle, et al. v. Baass et al.*, Case No. 3:18-cv-06430-MMC
Memorandum of Point and Auth. iso Joint Motion for Preliminary Approval of Class Settlement

b.    The terms of the Parties' proposed attorneys' fee award also weigh in favor of approval..........................35

4.    The Parties' Agreement treats all Settlement Class Members equitably.....................................................36

C.    The Parties' Proposed Form of Notice Should Be Approved..............................37

D.    The Agreement meets the Northern District's Guidance.....................................38

V.    CONCLUSION..........................................................................................................41

ATTORNEY ATTESTATION..............................................................................................42

1

**TABLE OF AUTHORITIES**

2

**Cases**

3    *Am. Council of the Blind v. Astrue*, No. C05-04696 WHA, 2008 WL 4279674, at

4        *6 (N.D. Cal. Sept. 11, 2008) ............................................................. 27

5    *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) .................................... 22, 29

6    *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)) ......................................... 25

7    *B.K. by her next friend Tinsley v. Snyder*, 922 F.3d 957 (9th Cir. 2019) ..................... 25

8    *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 64 (3d Cir. 1994) ............................ 29

9    *Bakhtiar v. Info. Res., Inc.*, 2021 WL 4472606, at *5–6 (N.D. Cal. Feb. 10, 2021) ................... 22

10   *Californians for Disability Rights, Inc. v. Ca. Dep't of Transp.*, 249 F.R.D. 334,

11       349 (N.D. Cal. 2008) ........................................................... 28

12   *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ..................... 12

13   *Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 512 (N.D. Cal.

14       2011) ........................................................................ 25, 29

15   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) .............................. 24, 26, 32, 33

16   *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)) ........................... 26

17   *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ............................................. 36

18   *Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 153 (N.D. Cal. 2015) ...................... 24, 25

19   *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ............... 35

20   *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2019 WL

21       3290770, at *7 (N.D. Cal. July 22, 2019) .................................... 32

22   *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) ........................ 27

23   *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019 WL 1411510

24       at *4 (N.D. Cal. Mar. 28, 2019) .............................................. 30

25   *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) ................... 30, 32

26   *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ................................... 30, 37

27   *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *amended*, 108

28       F.3d 981 (9th Cir. 1997) ..................................................... 35

1   *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) .......................................... 36

2   *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal.

3    2004) .......................................................................................................................................... 34

4   *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2019 WL 1437101, at

5    *6 (N.D. Cal. Mar. 29, 2019) .................................................................................................... 31

6   *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625

7    (9th Cir. 1982) ...................................................................................................................... 12, 22

8   *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ................................................................ 25, 26, 29

9   *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552-53 (2010) .................................................. 35

10   *Rafferty et al. v. Proud et al.*, No. 13-CV-1410-TPG (SDNY) .................................. 38, 39, 40, 41

11   *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) ........................................................ 24

12   *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)) ............................................ 37

13   *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019) ................................... 31

14   *Rosas v. Baca*, No. 12 Civ. 428, 2012 WL 2061694, at *3 (C.D.Cal. June 7,

15    2012)) .......................................................................................................................................... 25

16   *Smith v. City of Oakland*, 339 F.R.D. 131, 140 (N.D. Cal. 2021) ........................................ 25, 26

17   *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ........................................................... 22

18   *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 166 (N.D. Cal. 2019) .............. 22, 30, 33

19   *Uschold*, 333 F.R.D. at 170 ........................................................................................................ 36

20   *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1304 (W.D. Wash. 2001),

21    *aff'd*, 290 F.3d 1043 (9th Cir. 2002) .......................................................................................... 36

22   *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ............................................ 24, 25, 26

23   **Statutes**

24   29 United States Code §§ 701-797(b) ......................................................................................... 39

25   29 United States Code § 794 ...................................................................................................... 12

26   29 United States Code § 794a(b) (Section 504) .......................................................................... 35

27   29 United States Code § 794, et seq. ........................................................................................... 20

28   28 United States Code § 1715(b) ................................................................................................. 38

8

*Hinkle, et al. v. Baass et al.*, Case No. 3:18-cv-06430-MMC
Memorandum of Point and Auth. iso Joint Motion for Preliminary Approval of Class Settlement

42 United States Code § 12101 et seq. ........................................................................... 39

42 United States Code § 12131 et seq. ..................................................................... 12, 20

42 United States Code § 12205 (ADA) ........................................................................ 35

42 United States Code § 18116 ............................................................................... 12, 20

Affordable Care Act § 1557 .................................................................................... 12, 20

Americans with Disabilities Act of 1990 ........................................................ 12, 20, 39

California Civil Code § 54 ............................................................................................ 12

California Civil Code § 54, et seq. ............................................................................... 20

California Disabled Persons Act .............................................................................. 12, 20

California Government Code §11135 ....................................................................... 12, 20

Class Action Fairness Act ............................................................................................ 38

New York City Human Rights Law, N.Y.C. ADMIN. CODE§ 8-107 ....................... 39

New York State Human Rights Law, N.Y.EXEC. LAW §§ 291 et seq. ...................... 39

18 New York Codes, Rules and Regulations. § 303.1, State Regulations ................... 39

Rehabilitation Act of 1973 § 504 ..................................................................... 12, 20, 39

U.S. Constitution, Fourteenth Amendment § 1 ............................................................ 39

U.S. Constitution, Fourteenth Amendment, Due Process Clause .......................... 12, 39

**Rules**

Federal Rules of Civil Procedure, Rule 23(a) ......................................................... *passim*

Federal Rules of Civil Procedure, Rule 23(a)(1) ........................................................ 23

Federal Rules of Civil Procedure, Rule 23(a)(2) ........................................................ 24

Federal Rules of Civil Procedure, Rule 23(a)(3) ........................................................ 26

Federal Rules of Civil Procedure, Rule 23(a)(4) ........................................................ 27

Federal Rules of Civil Procedure, Rule 23(b) ............................................................. 22

Federal Rules of Civil Procedure, Rule 23(b)(2) .............................................. 23, 30, 37

Federal Rules of Civil Procedure, Rule 23(b)(3) ........................................................ 24

Federal Rules of Civil Procedure, Rule 23(c)(2)(a) .................................................... 37

Federal Rules of Civil Procedure, Rule 23(e) ....................................................... 22, 40

*Hinkle, et al. v. Baass et al.*, Case No. 3:18-cv-06430-MMC
Memorandum of Point and Auth. iso Joint Motion for Preliminary Approval of Class Settlement

Federal Rules of Civil Procedure, Rule 23(e)(1) ................................................................. 37

Federal Rules of Civil Procedure, Rule 23(e)(1)(B) .................................................... 23, 30

Federal Rules of Civil Procedure, Rule 23(e)(2) ..................................................... 23, 30, 32

Federal Rules of Civil Procedure, Rule 23(e)(2)(B) ........................................................... 31

Federal Rules of Civil Procedure, Rule 23(e)(2)(C) ........................................................... 32

Federal Rules of Civil Procedure, Rule 23(e)(2)(C)(i) ....................................................... 33

Federal Rules of Civil Procedure, Rule 23(e)(3) ................................................................. 32

Federal Rules of Civil Procedure, Rule 23(e)(b)(2) ............................................................ 31

**Regulations**

28 Code of Federal Regulations § 35.104 ..................................................................... 11, 18

28 Code of Federal Regulations § 35.160(a)(1) ................................................................... 15

28 Code of Federal Regulations § 35.160(b)(2) ................................................................... 18

28 Code of Federal Regulations §§ 35.160-35.164 .............................................................. 16

28 Code of Federal Regulations § 35.164 ................................................................. 15, 18, 37

28 Code of Federal Regulations, Part 35 ............................................................................. 20

California Code of Regulations, Title 9 § 1810.410 ............................................................ 37

*Hinkle, et al. v. Baass et al.*, Case No. 3:18-cv-06430-MMC
Memorandum of Point and Auth. iso Joint Motion for Preliminary Approval of Class Settlement

**MEMORANDUM OF POINTS AND AUTHORITIES[1]**

## I.    INTRODUCTION

In October 2018, Plaintiffs filed this action against Defendants, alleging that Defendants were violating federal and state laws by failing to provide effective communication to Plaintiffs and similarly situated Blind[2] Medi-Cal consumers. Following extensive negotiations that took place over several years, the Parties have reached a proposed Class Settlement Agreement (the "Agreement") that includes the development and implementation of a statewide system for effective communication with participants in the Medi-Cal program who are Blind or have vision-related disabilities. Among other things, the Agreement establishes system-wide processes for: (1) identifying people who request written materials in an alternative format[3] and maintaining this information in a centralized database; (2) exchanging this data among DHCS, counties, managed care plans, and other partners and contractors that provide written materials as part of the Medi-Cal program; (3) sending timely and accessible notices in the requested alternative format within a reasonable timeframe; (4) providing information and instructions to counties and managed care plans regarding their obligations to provide effective communication to Blind and visually-impaired individuals; and (5) collecting and reviewing information sufficient to assure DHCS that counties and managed care plans are furnishing effective communications to Blind and visually-impaired individuals. *See* Decl. Autumn Elliott Supp. Joint Mot. Prelim. Approval ("Elliott Decl."), Ex. 1: Class Action Settlement Agreement (hereinafter "Agreement"). The Agreement also requires County Defendants to follow DHCS's instructions regarding the provision of effective communication, train county employees on these

---

[1] Nothing in this joint motion should be construed as an admission of liability, or a waiver of any arguments or defenses any party might raise in the future, should final approval not be granted.

[2] "Blind" includes all persons who, under state or federal civil rights laws, have a vision-related disability that limits the major life activity of seeing, and require alternative methods to access standard print information. Any reference to applicants or beneficiaries also includes Blind individuals who are representing or otherwise assisting a Medi-Cal applicant or beneficiary.

[3] "Alternative format" refers to "auxiliary aids and services" as defined in 28 C.F.R. § 35.104. Standard alternative formats include large print, Braille, and audio and electronic formats. Other alternative formats include, but are not limited to, documents with print larger than 20-point, provision of tactile signing, or provision of a qualified reader.

11

*Hinkle, et al. v. Baass et al.*, Case No. 3:18-cv-06430-MMC
Memorandum of Point and Auth. iso Joint Motion for Preliminary Approval of Class Settlement

1    requirements, have an employee who is trained and available to answer questions regarding

2    effective communication, and monitor compliance.

3      Settlement is "the preferred means of dispute resolution[,] . . . especially . . . in complex

4    class action litigation." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d

5    615, 625 (9th Cir. 1982). Indeed, a "strong judicial policy" favors the settlement of class actions.

6    *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Here, the Agreement is in

7    the best interest of all Parties and satisfies the requirements of Federal Rule of Civil Procedure

8    23.

9      The Parties therefore respectfully request that the Court: (1) grant preliminary approval of

10   the Agreement; (2) provisionally certify the proposed Settlement Class and appoint Plaintiffs'

11   attorneys as class counsel, pending final approval; (3) approve the Parties' proposed form of

12   notice and direct notice to the class; and (4) set deadlines for notice, objections, and a final

13   fairness hearing.

14   **II.**  **FACTUAL BACKGROUND**

15     **A.**  <u>**Litigation History**</u>

16       1.  <u>Commencement of the Action</u>

17     Plaintiffs filed this putative class action on October 22, 2018, alleging that the California

18   Department of Health Care Services, its Director in her official capacity, and County Defendants

19   fail to provide effective communication to Blind and visually-impaired Medi-Cal consumers in

20   violation of the Americans with Disabilities Act of 1990 ("ADA") (42 U.S.C. § 12131 et seq.);

21   section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794); section 1557 of the Affordable

22   Care Act ("ACA") (42 U.S.C. § 18116); section 11135 of the California Government Code; the

23   California Disabled Persons Act (Cal. Civ. Code, § 54); and the Due Process Clause of the

24   Fourteenth Amendment of the U.S. Constitution. Compl., ECF No. 1. Defendants deny these

25   allegations. Answer of Defendants DHCS and DHCS's Director, ECF No. 23; Answer of County

26   Defendants, ECF No. 24.

27   / / /

28   / / /

12

*Hinkle, et al. v. Baass et al.*, Case No. 3:18-cv-06430-MMC
Memorandum of Point and Auth. iso Joint Motion for Preliminary Approval of Class Settlement

1
2

2.    The Parties Reached the Agreement Through Over Five Years of

Settlement Negotiations

3    On October 23, 2018, the parties were ordered to comply with the provisions of General

4  Order 56. ECF No. 4. In compliance with the order, Plaintiffs and Defendant DHCS held in-

5  person settlement discussions on November 10, 2018 and January 29, 2019. Elliott Decl. ¶ 5.

6  County Defendants were excused from compliance with paragraphs 3 and 4 of General Order 56

7  by Court order. ECF No. 22; *id*. The parties complied with paragraph 2 of General Order 56 by

8  exchanging initial disclosures on February 1, 2019. *Id.* at ¶ 6.

9    On March 13, 2019, the case was referred to mediation and assigned to the Honorable

10  David A. Garcia (ret.). ECF Nos. 27-28. The parties participated in a mediation session on May

11  29, 2019. Elliott Decl. ¶ 7. The parties did not reach an agreement during this session and

12  Plaintiffs proposed that the parties engage in simultaneous litigation and settlement efforts in

13  order to facilitate an expedited resolution. ECF No. 31. Defendants opposed this two-track

14  approach. ECF Nos. 32-33. The Court denied Plaintiff's motion for administrative relief from

15  General Order 56. ECF No. 34.

16    The parties continued to work diligently towards an agreement in this matter, engaging in

17  multiple mediation sessions facilitated by the Honorable David A. Garcia from July 12, 2019

18  through March 15, 2021. ECF Nos. 35, 39, 48; Elliott Decl. ¶ 9. Although the parties were

19  unable to reach final agreement, the mediation sessions helped to narrow the issues in this

20  matter. *Id*. On March 16, 2021, the Honorable David A. Garcia certified to this Court that

21  mediation was complete. ECF No. 48.

22    The Parties agreed to continue settlement discussions with the assistance of a magistrate

23  judge, and on April 5, 2021, the Parties were referred to the Honorable Jacqueline Scott Corley

24  for the purposes of conducting a settlement conference. ECF No. 52. The Parties attended a

25  video settlement conference facilitated by Judge Corley on July 2, 2021, where Defendants

26  agreed to provide Plaintiffs with an updated settlement proposal. ECF No. 57. The Parties

27  attended seven additional settlement conferences with Judge Corley on July 21, 2021; September

28  21, 2021; October 29, 2021; December 17, 2021; March 28, 2022; July 25, 2022; and August 8,

2022. ECF Nos. 57-64, 67-68. In addition, the Parties also regularly conducted settlement discussions among themselves and exchanged dozens of proposals in crafting this settlement, including an implementation plan, monitoring plan, and many versions of the Agreement. Elliott Decl. ¶ 11. At multiple junctures, the Parties reached impasse and only overcame these issues with the assistance of Judge Corley. *Id*. Plaintiff California Council of the Blind participated in many of the settlement conferences and meetings where substantive terms were negotiated, and all named plaintiffs provided input throughout the negotiation process. Decl. Steven Mendelsohn Supp. Joint Mot. Prelim. Approval ("Mendelsohn Decl.") ¶¶ 9-10; Decl. Wylene Hinkle Supp. Joint Mot. Prelim. Approval ("Hinkle Decl.") ¶¶ 9-10; Decl. Dennis Gassaway Supp. Joint Mot. Prelim. Approval ("Gassaway Decl.") ¶¶ 8-9.

An agreement on key issues was reached during a final settlement conference with Judge Corley on August 8, 2022. ECF No. 68. The Parties continued meeting among themselves to complete the details of the Agreement through June 2023. Elliott Decl. ¶ 12. Upon finalizing the Agreement, Plaintiffs provided Defendants with their demand for attorneys' fees and costs on July 14, 2023. *Id.* at ¶ 13, 43-44. Plaintiffs' initial demand consisted of $1,882,211 in attorneys' fees and costs incurred,[4] $87,495 for work regarding Court approval of the settlement, and $249,850 to cover work necessary to monitor the implementation of the Agreement. *Id.* at ¶ 43-44. Plaintiffs' counsel also provided Defendants their detailed billing records and itemized costs. *Id.* at ¶ 50. After several months of negotiations, the Parties reached agreement on a lump sum payment of $1,550,000 for these fees and costs, including the costs associated with monitoring the settlement agreement. *Id.* at ¶ 45; Agreement § VIII.

### B.    Material Terms of the Proposed Settlement Agreement

The Agreement defines a single statewide Settlement Class as follows:

> Individuals in the State of California who are applicants or beneficiaries of Medi-Cal and who need written materials regarding Medi-Cal in an Alternative Format due to a vision-related disability

---

[4] This demand was based on Plaintiffs' counsel's combined lodestar, discussed in § IV.B.3.b, below.

14

*Hinkle, et al. v. Baass et al.*, Case No. 3:18-cv-06430-MMC
Memorandum of Point and Auth. iso Joint Motion for Preliminary Approval of Class Settlement

Agreement § III.D.

1.    <u>DHCS Commitments</u>

Pursuant to this Agreement, DHCS commits to implement programs and systems that ensure Effective Communication[5] with participants in the Medi-Cal program, including applicants, beneficiaries, and their authorized representatives, who are Blind or have vision-related disabilities. Agreement § II. Specifically, DHCS agrees to establish system-wide processes for:

- Identifying people who have requested Alternative Formats, including their requested methods of communication, and maintaining such information in a centralized database;

- Providing for the exchange of data among DHCS; the California Department of Social Services (CDSS), which administers the fair hearing system for Medi-Cal appeals; counties (including county offices and programs that administer portions of the Medi-Cal program); managed care plans; and any administrative contractor of DHCS that provides Written Materials[6] as part of the Medi-Cal program regarding the identity of people who have requested Alternative Formats and their requested method of communication, for purposes of ensuring that participants in Medi-Cal receive their requested Alternative Format regardless of which entity receives the requests or sends written communications;

- Sending timely and accessible routine notices in the requested Alternative Format, and sending individualized notices (such as a notice of action) in the requested Alternative Format within a reasonable timeframe and in compliance with due

---

[5] "Effective Communication" refers to the obligation described in 28 C.F.R. § 35.160(a)(1), and subject to 28 C.F.R. § 35.164. Agreement § III.G.

[6] "Written Material" is defined as a written document provided to a Medi-Cal beneficiary that is subject to the requirements of applicable federal or state regulations, including documents subject to California Welfare and Institutions Code section 14029.91. Nothing in the definition is intended to obviate DHCS's obligations regarding a person who requests that other documents be provided in an Alternative Format (or other type of auxiliary aid or service) or requests documents in other languages. Agreement § III.T.

1        process requirements;

2        •   Providing information and instructions to counties and managed care plans regarding

3            their obligations to provide Effective Communication to Blind and visually-impaired

4            individuals;

5        •   Collecting and reviewing information sufficient to assure DHCS that counties and

6            managed care plans are furnishing Effective Communications to Blind and visually-

7            impaired individuals, pursuant to and consistent with 28 C.F.R. §§ 35.160-35.164 and

8            written guidance provided by DHCS, including data pertaining to the numbers of

9            people requesting Alternative Formats, the types of formats requested, denials of

10          requests, and complaints. *Id.*

11       The central remedial element of the Agreement is the implementation plan provided in

12 Exhibit A of the Agreement (Accessibility Formats of Medi-Cal Notices – Implementation Plan),

13 which contains detailed information about DHCS's phased implementation process and manual

14 tracking of requests for Written Materials to be provided in an Alternative Format. *See*

15 Agreement § IV.A & Exhibit A (hereinafter, "Implementation Plan"). The Implementation Plan

16 includes a detailed list of major activities and milestones for developing a system-wide solution

17 for Effective Communication with Blind participants in the Medi-Cal program. *Id.*

18       Major activities and milestones covered by the Implementation Plan include, among other

19 things:

20          •   Conducting outreach to Medi-Cal beneficiaries regarding the availability of

21              Written Materials in Alternative Formats;

22          •   Developing an online platform where applicants and beneficiaries can submit

23              requests for Written Materials in Alternative Formats;

24          •   Implementing an Alternative Format Vendor Call Center that allows beneficiaries

25              and applicants to submit requests for written communications in Alternative

26              Formats by phone and obtain updates on the status of such requests;

27          •   Creating and maintaining a centralized database to collect and store information

28              regarding people who have requested Alternative Formats and their requested

1    methods of communication;

2    • Establishing a process for distributing beneficiaries' Alternative Format selections

3    to counties, managed care plans, and other DHCS administrative contractors;

4    • Developing and distributing a user guide for the online platform, a call script, and

5    an Alternative Format FAQ to programs and partners;

6    • Training DHCS employees regarding Alternative Format obligations and

7    processes;

8    • Providing information and instructions to counties, managed care plans, fee-for-

9    service providers, and other components of the program regarding obligations to

10    provide Effective Communication to Blind and visually-impaired individuals;

11    • Implementing a manual process for converting Written Materials and sending

12    applicable documents in beneficiaries' requested Alternative Formats;

13    • Converting notices, letters, and other communications into Alternative Formats;

14    • Ensuring that all websites, web content, and mobile applications within DHCS's

15    exclusive control conform with the standards published by the World Wide Web

16    Consortium, including Web Content Accessibility Guidelines 2.1 AA;

17    • Enhancing paper and electronic Medi-Cal Applications to enable applicants to

18    select Alternative Format preferences;

19    • Converting the enhanced Medi-Cal paper application to Alternative Formats;

20    • Enhancing the electronic Medi-Cal Application and IT systems to receive, store,

21    and track the Alternative Format selection from Medi-Cal applicants and to

22    automatically send notices in the requested Alternative Format; and

23    • Implementing an automated process for sharing Alternative Format requests with

24    counties, plans, and contractors.

25    The Implementation Plan also includes dates that represent DHCS's good faith estimates

26    for when implementation milestones will be achieved. Agreement § IV.C. DHCS will use its best

27    efforts to complete the listed tasks by these dates, and will report on progress to Plaintiffs'

28    counsel on a semiannual basis. *Id.* In addition, DHCS, acting in its reasonable discretion, will

17

1    communicate with counties, health plans, programs overseen by the Medi-Cal Behavioral Health

2    Division ("MCBHD") and by California Children's Services ("CCS"), and fee-for-service

3    providers as necessary or appropriate to effectuate the Agreement's terms. Agreement § IV.D.

4         In accordance with this Agreement and its Implementation Plan, DHCS will ensure that

5    any means by which individuals may apply for Medi-Cal, may initiate the Medi-Cal eligibility

6    process, may respond to the Medi-Cal redetermination process, or may review or correct

7    application and eligibility information will allow Blind individuals to indicate their need to

8    receive Written Materials in Alternative Formats. Agreement § IV.B. DHCS must provide

9    Written Materials in Standard Alternative Format[7] upon request to Medi-Cal beneficiaries,

10   applicants, or authorized representatives. Agreement § IV.A. In the event a beneficiary,

11   applicant, or authorized representative of a beneficiary or applicant requests Written Materials in

12   a Nonstandard Alternative Format,[8] the individual may submit a request to DHCS's Office of

13   Civil Rights (OCR) for consideration. *Id*. DHCS will evaluate such requests and provide a

14   written determination pursuant to 28 C.F.R. § 35.160(b)(2) and § 35.164. *Id*.

15        DHCS and Plaintiffs sought and obtained guidance from the Centers for Medicare and

16   Medicaid Services (CMS) regarding Written Materials in an Alternative Format that are not

17   issued contemporaneously with Written Materials in a standard format in which the visually

18   impaired Medi-Cal beneficiary must respond by a specific deadline. In accordance with the

19   guidance provided by CMS, DHCS agrees that in order for notice prior to an adverse action,

20   denial, or a change in eligibility or benefits to be considered adequate, such notice must be

21   provided in an accessible format requested by and/or approved for the beneficiary. Agreement

---

[7] For purposes of this Agreement, "Standard Alternative Format" refers to large print, Braille, and audio and electronic formats. DHCS further agrees to periodically evaluate other types of "auxiliary aids and services" (as defined in 28 C.F.R. § 35.104) for providing written communications under this Agreement. Any party to the Agreement may also provide written notice to the other parties requesting evaluation of additional means of transmitting communications in audio or electronic format. The receiving party shall consider such proposals, and will advise the proposing party as to whether it agrees to modify the Agreement to include such other Alternative Formats. Agreement § III.S.

[8] "Nonstandard Alternative Format" refers to formats other than Large Print, Braille, Audio, and Electronic Formats. It includes, but is not limited to, a document with print larger than 20-point, provision of tactile signing, or provision of a qualified reader. Agreement § III.L.

18

1 § IV.F. DHCS further agrees to determine related timelines for responding to any deadline based

2 upon the date notice in an *accessible* format was provided in that situation. *Id.* And DHCS will

3 provide guidance to counties, health plans, programs overseen by MCBHD and CCS, and fee-

4 for-service providers regarding determinations of notice dates from the date when alternative

5 formats are provided. *Id.*

6      Finally, DHCS agrees to ensure that websites and web-based applications within DHCS's

7 exclusive control are in compliance with applicable state and federal laws regarding website

8 accessibility. Agreement § IV.G. DHCS will notify Plaintiffs' counsel if usability testing occurs

9 for applications and websites undergoing substantive modifications and take appropriate steps to

10 resolve any accessibility barriers identified. *Id.* The Agreement and its release provision do not

11 apply to claims regarding the accessibility of websites, web content, and mobile applications that

12 form part of the Medi-Cal system but are not within DHCS's exclusive control. *Id.*

13                2.      Monitoring Protocol

14      The Agreement includes a monitoring protocol during its operative period. *See*

15 Agreement § IV.E & Exhibit B (hereinafter, "Monitoring Protocol"). Pursuant to the Monitoring

16 Protocol, DHCS will provide Class Counsel[9] with drafts of non-released, written guidance

17 documents and external communications referenced in the Agreement and Implementation Plan

18 for review prior to release for public comment, provide Class Counsel with 14 days to comment,

19 and take any comments into consideration. Monitoring Protocol ¶ 1. DHCS will also provide

20 Class Counsel notice of when DHCS-controlled websites and web-based applications are

21 undergoing user testing, and whether there is an opportunity for clients to participate in such

22 testing and provide feedback. *Id.* at ¶ 2.

23      The Monitoring Protocol further requires DHCS to share reports with Class Counsel

24 every six months with county-by-county information for the 25 counties with the highest number

25 of Alternative Format requests, and aggregate information for the remaining counties, regarding

26 the total number of beneficiaries requesting and receiving each type of Alternative Format.

27

28 [9] "Class Counsel" means Disability Rights California, Disability Rights Advocates, and
Disability Rights Education and Defense Fund. Agreement § III.E.

19

*Hinkle, et al. v. Baass et al.*, Case No. 3:18-cv-06430-MMC
Memorandum of Point and Auth. iso Joint Motion for Preliminary Approval of Class Settlement

1  Monitoring Protocol ¶ 3(a). DHCS will review and consider this data, and if it reveals recurring

2  issues regarding any county's provision of Alternative Formats, DHCS will confer and work

3  with the county regarding corrective action and provide a summary to Class Counsel of any

4  issues. *Id.*at ¶ 3(b)-(c). Further, DHCS will build into its monitoring program a process for

5  verifying the compliance of managed care plans with applicable requirements to provide

6  Alternative Formats within three years of the Effective Date of the Agreement, share reports with

7  Class Counsel every six months, review and consider this data, and address any identified issues.

8  *Id.* at ¶ 4.

9        DHCS's OCR will accept and respond to complaints from individuals about Effective

10  Communication and report every six months to Class Counsel on the number of complaints

11  received regarding Alternative Formats. *Id.* at ¶ 7. DHCS will follow an established protocol to

12  review requests for Written Materials in a Nonstandard Alternative Format, and all written

13  statements denying requests for Alternative Formats will include contact information for

14  DHCS's OCR in case the requestor seeks further assistance or wishes to make a complaint. *Id.* at

15  ¶¶ 5-6.

16              3.    <u>County Defendant Commitments</u>

17        Pursuant to the Agreement, the County Defendants acknowledge that they are subject to

18  the Disability Access Laws[10] and shall (1) fully cooperate with DHCS's plan for the provision of

19  Effective Communication to Blind individuals, as described in this Settlement Agreement and its

20  attachments, including by following DHCS's instructions regarding the provision of Effective

21  Communication; (2) provide training to all County employees who directly interact with Medi-

22  Cal applicants or recipients regarding the provision of Effective Communication; (3) have at

23  least one employee who is trained and available to answer questions about Effective

24  Communication; and (4) monitor their own compliance with DHCS's plan. Agreement § V.

25  _____

26  [10] "Disability Access Laws" are defined as the following laws and regulations, as amended:
    Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12131, et seq.; ADA Title II
27  implementing regulations, 28 C.F.R., Part 35; Section 504 of the Rehabilitation Act of 1973, 29
    U.S.C. §794, et seq.; Section 1557 of the Affordable Care Act, 42 U.S.C. §18116; California
28  Government Code §11135; California Disabled Persons Act, California Civil Code §54, et seq.;
    or any other regulations or guidelines promulgated pursuant to those statutes. Agreement § III.F.

*Hinkle, et al. v. Baass et al.*, Case No. 3:18-cv-06430-MMC
Memorandum of Point and Auth. iso Joint Motion for Preliminary Approval of Class Settlement

1    The County Defendants further agree to provide Named Plaintiffs served by County

2    Defendants with Written Materials in the Standard Alternative Format they have requested,

3    except that the County of Alameda shall provide Plaintiff Dennis Gassaway with County

4    support, which shall include County staff reading print documents to him over the phone, unless

5    any of the Named Plaintiffs requests Written Materials in a different Alternative Format. *Id.*

6                    4.       Procedural Requirements

7        The Agreement includes procedural requirements that will benefit Settlement Class

8    Members. The Agreement provides that the Parties will jointly ask the Court to retain

9    jurisdiction to ensure compliance with the terms of the Agreement. Agreement § XI. Termination

10   will occur two years after completion of the Implementation Plan. Agreement § VI.

11       The Agreement includes a reasonable release of claims as to Defendants, DHCS's current

12   or former directors, officers, administrators, agents, employees, divisions, branches, units,

13   contractors, successors, and assigns, and all other individuals and entities legally acting on behalf

14   of Defendants. Agreement § IX. Entities not listed remain liable for their own obligations under

15   the Disability Access Laws, and the release does not apply to claims for damages. *Id.*

16       The Agreement also includes an alternative dispute resolution process. Agreement § VII.

17   This includes sending a letter concerning any dispute, meeting and conferring in good faith, and

18   requesting that the U.S. District Court of the Northern District of California's ADR Program

19   convene a conference for the parties to discuss unresolved disputes within no less than thirty

20   days of receipt of the letter. Agreement § VII(A)-(B). If the ADR process does not successfully

21   resolve the dispute, the aggrieved party may file a motion with the Court regarding the

22   Agreement. Agreement § VII(C). The Parties agree that the Court shall continue to have

23   jurisdiction to fully resolve any such dispute. *Id.*

24       The Agreement also describes a process for submitting a joint application for preliminary

25   approval of the Agreement, providing notice to the Settlement Class, managing objections by

26   any Settlement Class member or legal representative of a Settlement Class member, and

27   submitting a joint application for final approval and final fairness hearing. Agreement § X(A)-

28   (D). The Agreement further provides a process for addressing modifications to the Agreement

1  suggested by the Court. Agreement § X(F). If the Court does not grant preliminary approval, if

2  the Court does not grant final approval, the Agreement will be deemed null and void *ab initio*.

3  Agreement § X(E).

4                    5.    Attorneys' Fees

5         DHCS will pay Class Counsel $1,550,000 for attorneys' fees and costs. Agreement §

6  VIII.

7  **III.    LEGAL STANDARD**

8         Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action settlement that is

9  binding on absent class members requires court approval. *Officers for Just.*, 688 F.2d at 623.

10        Court approval of a class action settlement is a multi-step process, the first of which is

11 preliminary approval of the settlement. *See Bakhtiar v. Info. Res., Inc.*, 2021 WL 4472606, at

12 *5–6 (N.D. Cal. Feb. 10, 2021) (describing the steps in a court's evaluation of a class action

13 settlement). If a class has not yet been certified, the Court may conditionally certify a settlement

14 class in conjunction with the preliminary approval. *See Uschold v. NSMG Shared Servs., LLC*,

15 333 F.R.D. 157, 166 (N.D. Cal. 2019) (holding that a court may preliminarily certify a class and

16 order notification of such class if the proposed settlement simultaneously receives preliminary

17 approval, stating, "Courts must peruse the proposed compromise to ratify both the propriety of

18 the certification and the fairness of the settlement") (*citing Staton v. Boeing Co.*, 327 F.3d 938,

19 952 (9th Cir. 2003); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)

20 (discussing the role settlement may plan in determining the propriety of class certification). After

21 a notice period that allows class members to object, the Court may give final approval of the

22 settlement if it determines that the settlement is fair, reasonable, and adequate. Final approval

23 may also include a final order certifying the class.

24        To support class certification, a court must find each of Rule 23(a)'s four requirements—

25 numerosity, commonality, typicality, and adequacy of representation—has been satisfied. The

26 court must then determine whether the proposed class fulfills the criteria of one of the three

27 subsections of Rule 23(b). *Amchem Prods.*, 521 U.S. at 614. The applicable provision in this case

28 is Rule 23(b)(2), which "permits class actions for declaratory or injunctive relief where 'the party

opposing the class has acted or refused to act on grounds generally applicable to the class.'" *Id.*

(quoting Fed. R. Civ. P. 23(b)(2)).

At the preliminary approval stage, the Parties must "show that the court will likely be

able to" approve their proposed settlement when considering the following Rule 23(e)(2) factors:

> (1) whether the class was adequately represented;
> (2) whether the proposed settlement was negotiated at arm's length;
> (3) whether the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal, the terms of any proposed award of attorneys' fees, and other facts; and
> (4) whether the proposal treats class members equitably relative to one another.

Fed. R. Civ. P. 23(e)(1)(B), 23(e)(2).

## IV.    ARGUMENT

### A.    The Proposed Settlement Class Should Be Certified

The Parties have stipulated to seek certification of the following Settlement Class, for the

purposes of settlement only:

> Individuals in the State of California who are applicants or beneficiaries of Medi-Cal and who need written materials regarding Medi-Cal in an Alternative Format due to a vision-related disability.

Agreement § III.D; X(A).

The proposed Settlement Class meets the requirements of Rule 23(a) and Rule 23(b)(2)

and should be provisionally certified pending final approval. This Settlement Class is slightly

different from the class described in Plaintiffs' Complaint,[11] but given the nature of the claims

and the injunctive relief at issue, this difference is without effect. Defendants do not contest that

this proposed Class meets the requirements of Rules 23(a) and 23(b)(2) and should be certified.

1.    The proposed class of over 150,000 consumers is sufficiently numerous.

The first element of Rule 23(a) requires that the class be "so numerous that joinder of all

members is impracticable." Fed. R. Civ. P. 23(a)(1). While Rule 23(a)'s numerosity requirement

is "not tied to any fixed numerical threshold," courts generally find that classes of 40 or more

---

[11] The class proposed in Plaintiffs' Complaint was "Residents of the State of California who, due to a vision-related disability, need written materials in alternative formats for effective communication regarding Medi-Cal as applicants or beneficiaries ("the Class")." Compl. ¶ 35.

1   members satisfy the requirement—and sometimes even fewer. *Rannis v. Recchia*, 380 F. App'x

2   646, 651 (9th Cir. 2010) (discussing standard and affirming certification of 20-member class);

3   *Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 153 (N.D. Cal. 2015) (citing 1 William

4   Rubenstein, Newberg on Class Actions § 3:12, at 198 (5th ed. 2011) ("A class or subclass with

5   more than 40 members 'raises a presumption of impracticability based on numbers alone.'")).

6   The numerosity requirement is satisfied here, where available data indicates that over 150,000

7   individuals meet the class definition.[12] Elliott Decl. ¶¶ 35-38. The Court should therefore find

8   that the Settlement Class is sufficiently numerous.

9              2.      Plaintiffs' claims depend on common contentions capable of class-wide

10                     resolution.

11          The second element of Rule 23(a) requires the existence of "questions of law or fact

12  common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied where the plaintiff

13  alleges the existence of "common contentions" such that "determination of [their] truth or falsity

14  will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-*

15  *Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiffs may meet the commonality

16  requirement by raising "a single common question" of fact or law. *Wal-Mart*, 564 U.S. at 359.

17  The critical question is whether class members have suffered the same injury, such that their

18  claims "'depend upon a common contention' that is . . . capable of classwide resolution." *Id.* at

19  350.[13]

20          Plaintiffs challenge Defendants' alleged system-wide policies and practices that apply to

21  every member of the proposed Settlement Class, namely failing to ensure Effective

22  _____

23  [12] Nearly 15 million people have been certified as eligible for Medi-Cal services in the State of
    California. Medi-Cal at a Glance, California Department of Health Care Services (July 2023),

24  https://www.dhcs.ca.gov/dataandstats/statistics/Documents/Medi-Cal-at-a-Glance-Julne2024.pdf
    (last visited November 11, 2024). The rate of blindness in California is 1.14% according to the

25  Center for Disease Control. Prevalence Estimates – Vision Loss and Blindness, *available at*
    https://www.cdc.gov/visionhealth/vehss/project/index.html (last visited November 7, 2024).

26  Applying the 1.14% figure to 14,855,440 million people enrolled in Medi-Cal shows that a
    minimum of around 169,352 enrolled Medi-Cal recipients are blind.

27  [13] Rule 23(a)(2)'s commonality requirement is "less rigorous" than the predominance

28  requirement of Rule 23(b)(3). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998);
    *see also Wal-Mart*, 564 U.S. at 359 (distinguishing requirements).

1    Communication is provided to Blind and visually-impaired participants in the Medi-Cal

2    program. This includes: Defendants' alleged failure to have a system-wide process for

3    determining if Plaintiffs and other similarly situated individuals need information in alternative

4    formats that are accessible to them; Defendants' alleged failure to have adequate policies and

5    procedures in place for consistently over time providing Plaintiffs and other similarly situated

6    individuals with information in their requested alternative format; Defendants' alleged failure to

7    take the necessary steps to share information and coordinate the provision of information to

8    Plaintiffs and other similarly situated individuals in their requested alternative format; and

9    Defendants' alleged failure to take adequate steps to inform Plaintiffs and other similarly situated

10   individuals of their right to receive information in alternative formats and of the process for

11   obtaining information in alternative formats. Compl., ECF No. 1 ¶¶ 40-41.

12        The legality of these alleged actions and inactions is a question "capable of classwide

13   resolution." *Wal-Mart*, 564 U.S. at 350. Where a lawsuit seeks a determination regarding

14   "systemic policies and practices" that affect all of the putative class members—as this case

15   does—Rule 23(a)'s commonality requirement is met. *See Parsons v. Ryan*, 754 F.3d 657, 681

16   (9th Cir. 2014) (noting that commonality is satisfied in civil rights cases "where the lawsuit

17   challenges a system-wide practice or policy that affects all of the putative class members.")

18   (quoting *Rosas v. Baca*, No. 12 Civ. 428, 2012 WL 2061694, at *3 (C.D.Cal. June 7, 2012)); *see

19   also B.K. by her next friend Tinsley v. Snyder*, 922 F.3d 957, 969 (9th Cir. 2019) (finding

20   commonality despite possible differences among class members, and holding that challenge to

21   systemic "policies and practices [was] the 'glue' that h[eld] together the putative class"); *Smith v.

22   City of Oakland*, 339 F.R.D. 131, 140 (N.D. Cal. 2021) (finding commonality where plaintiffs

23   "challenge a deficient government policy or program, not [an] individual harm" in violation of

24   Title II); *Hernandez*, 305 F.R.D. at 153 ("[C]ommonality is satisfied where the lawsuit

25   challenges a system-wide practice or policy that affects all of the putative class members")

26   (citing *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)); *Gray v. Golden Gate Nat'l

27   Recreational Area*, 279 F.R.D. 501, 512 (N.D. Cal. 2011) (finding commonality satisfied where

28   plaintiffs challenged "uniform policies and practices of failing to ensure" accessibility for people

1   with disabilities).

2          Insofar as Settlement Class Members differ in their access needs or in the extent to which

3   they may have been harmed by Defendants policies, these dissimilarities do not impede

4   classwide resolution. *Wal-Mart*, 564 U.S. at 350. Where plaintiffs challenge "a deficient

5   government policy or program, not [an] individual harm," no individualized inquiry is necessary.

6   *Smith*, 339 F.R.D. at 140. Here, Plaintiffs' central claim is that they were excluded from full

7   participation in the Medi-Cal program because of their vision-related disability—a question

8   common to all Settlement Class Members. *Id.* at 141 ("[T]he question presented by this lawsuit

9   is not whether class members were denied access to particular [benefits], but whether they were

10  excluded from the protections of the [challenged program] because of their disabilities."). As

11  discussed in more detail in Section II(B) above, Plaintiffs sought and achieved systemic reforms,

12  including new systems and policies to identify people who have requested Alternative Formats,

13  maintenance of this information in a centralized database, exchange of this data among different

14  components of the Medi-Cal system, timely and accessible notices sent in the requested

15  Alternative Format, proactive guidance to counties and managed care plans, and monitoring of

16  these entities to ensure that Blind and visually-impaired Medi-Cal consumers are provided

17  Effective Communication. The Court should thus find that the proposed Settlement Class

18  satisfies Rule 23(a)'s commonality requirement.

19                 3.    Plaintiffs' claims are typical of the Settlement Class.

20         The third element of Rule 23(a) requires that the claims of the representative parties are

21  typical of each class member. Fed. R. Civ. P. 23(a)(3). Rule 23(a)'s typicality requirement is met

22  so long as the named plaintiffs' claims are "reasonably coextensive with those of absent class

23  members; they need not be substantially identical." *Parsons*, 754 F.3d at 685 (quoting *Hanlon v.*

24  *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "The test of typicality is 'whether other

25  members have the same or similar injury, whether the action is based on conduct which is not

26  unique to the named plaintiffs, and whether other class members have been injured by the same

27  course of conduct.'" *Smith*, 339 F.R.D. at 141 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d

28  497, 508 (9th Cir. 1992)).

*Hinkle, et al. v. Baass et al.*, Case No. 3:18-cv-06430-MMC
Memorandum of Point and Auth. iso Joint Motion for Preliminary Approval of Class Settlement

1    Plaintiffs allege injuries attributable to the same alleged course of conduct: Defendants'

2    failure to ensure that Blind and visually-impaired Medi-Cal consumers are provided Effective

3    Communication. *See e.g.*, Compl. ¶¶ 74-112; Decl. Mendelsohn ¶¶ 4-8; Decl. Hinkle ¶¶ 4-8;

4    Decl. Gassaway ¶¶ 2-7. Though the extent of their injuries may differ, Plaintiffs allege that *every*

5    class member is affected by this same course of conduct. The legal theories that Plaintiffs would

6    have relied on to redress this harm apply equally to each member of the proposed Settlement

7    Class, and the relief Plaintiffs have achieved will benefit that class as a whole. The Court should

8    thus find that the proposed Settlement Class satisfies Rule 23(a)'s typicality requirement.

9        4.    <u>Plaintiffs and their Counsel have and will fairly and adequately protect the</u>

10        <u>interests of the Class.</u>

11    The final element of Rule 23(a) requires the Court to find that the "representative parties

12    will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Plaintiffs

13    are adequately represented so long as "named plaintiffs and their counsel [do not] have any

14    conflicts of interest with other class members," and "the named plaintiffs and their counsel [will]

15    prosecute the action vigorously on behalf of the class." *In re Mego Fin. Corp. Sec. Litig.*, 213

16    F.3d 454, 462 (9th Cir. 2000), as amended (June 19, 2000).

17    There are no conflicts between Plaintiffs and other Settlement Class Members. Decl.

18    Mendelsohn ¶ 13; Decl. Hinkle ¶ 11; Decl. Gassaway ¶ 10; Decl. Plaintiffs Wylene Hinkle,

19    Dennis Gassaway, and the California Council of the Blind are impacted by Defendants' system-

20    wide policies and practices challenged in this case. Compl. ¶¶ 74-112. Plaintiffs sought only

21    injunctive and declaratory relief to ensure Medi-Cal consumers are provided Effective

22    Communication—relief structured to benefit the class as a whole. Compl. ¶¶ 200-01. *See Am.*

23    *Council of the Blind v. Astrue*, No. C05-04696 WHA, 2008 WL 4279674, at *6 (N.D. Cal. Sept.

24    11, 2008) (holding that where plaintiffs do not seek monetary damages, "[t]he potential for any

25    conflict or collusion is . . . minimal"). Furthermore, the Parties' Agreement provides the same

26    injunctive relief for Plaintiffs and every member of the proposed Settlement Class. *See* § II.B

27    (discussing relief provided by Agreement), *supra*.

28    In addition, Plaintiffs have vigorously represented the class and pursued this outcome on

1    behalf of the Settlement Class. *See* Decl. Mendelsohn ¶¶ 8-10; Decl. Hinkle ¶¶ 8-10; Decl.

2    Gassaway ¶¶ 7-9. Plaintiffs have knowledge of the case and their duties as class representatives

3    and have reviewed and support the Agreement. *See* Decl. Mendelsohn ¶ 8; Decl. Hinkle ¶ 8;

4    Decl. Gassaway ¶ 7.

5         Similarly, Plaintiffs' counsel have no known conflicts of interest with any Settlement

6    Class Member and have acted vigorously on behalf of the proposed Settlement Class, through

7    both litigation and arms-length settlement negotiations. Elliott Decl. ¶ 25; Decl. of Rosa Lee

8    Bichell Supp. Joint Mot. Prelim. Approval ("Bichell Decl.") ¶ 21; Decl. of Silvia Yee Supp. Joint

9    Mot. Prelim. Approval ("Yee Decl.") ¶ 14. Adequate representation of counsel is generally

10   presumed in the absence of contrary evidence. *Californians for Disability Rights, Inc. v. Ca.*

11   *Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008). Counsel may demonstrate their

12   qualifications with previous experience litigating class action lawsuits. *Hanlon*, 150 F.3d at

13   1021. In this case, Plaintiffs' counsel have extensive experience litigating class action suits,

14   including other similar class actions challenging governmental policies. Elliott Decl. ¶¶ 14-24;

15   Bichell Decl. ¶¶ 4-21; Yee Decl. ¶¶ 4-13.

16        Plaintiffs' counsel thoroughly investigated the claims and spent over five years engaging

17   in negotiations to reach this Agreement. Elliott Decl. ¶¶ 3–12. In addition, Plaintiffs' counsel

18   properly refused to negotiate a demand for payment of attorneys' fees and costs until after

19   reaching an agreement with Defendants on all other aspects of the litigation, to avoid even the

20   appearance of conflict between the interests of counsel and the interests of the Settlement Class.

21   *Id*. at ¶ 13, 43.

22        Based on Plaintiffs' counsel's experience litigating novel and complex cases against

23   public entities, they have determined that the injunctive terms and other provisions contained in

24   the Agreement will adequately protect the rights of Plaintiffs and the Settlement Class that this

25   case sought to vindicate. Elliott Decl. ¶¶ 26-30; Bichell Decl. ¶¶ 22-24; Yee Decl. ¶¶ 15-17.

26   Moreover, Plaintiffs' counsel are well aware that attempting to reach a resolution through

27   additional litigation could have taken years longer and might not have yielded a resolution as

28   favorable as that contained in the proposed Agreement. Elliott Decl. ¶ 30. The Court should find

1   that Rule 23(a)(4)'s adequacy requirement is met.

2              5.        The proposed class meets the requirements of Rule 23(b)(2).

3        Rule 23(b)(2), which requires that the defendant "has acted or refused to act on grounds

4   that apply generally to the class, so that final injunctive relief or corresponding declaratory relief

5   is appropriate respecting the class as a whole," was designed to empower individuals like

6   Plaintiffs to vindicate their civil rights through class action litigation. "Civil rights cases against

7   parties charged with unlawful, class-based discrimination are prime examples" of the purpose of

8   this rule. *Amchem Prods.*, 521 U.S. at 614; *see also Parsons*, 754 F.3d at 686 (The primary role

9   of this rule "has always been the certification of civil rights class actions."); *Baby Neal for & by*

10  *Kanter v. Casey*, 43 F.3d 48, 64 (3d Cir. 1994) ("The writers of Rule 23 intended that subsection

11  (b)(2) foster institutional reform by facilitating suits that challenge widespread rights violations

12  of people who are individually unable to vindicate their own rights."). The rule is "almost

13  automatically satisfied in actions primarily seeking injunctive relief." *Gray*, 279 F.R.D. at 520

14  (quoting *Baby Neal*, 43 F.3d at 58).

15       Here, Plaintiffs challenge Defendants' policies and practices applicable to all Settlement

16  Class Members and seek injunctive relief. The proposed Agreement will benefit all Settlement

17  Class Members. Among other improvements, every Settlement Class Member will be able to

18  request and receive Written Materials in their preferred Alternative Format across all

19  components of the Medi-Cal system, facilitating increased independence and privacy in

20  managing their own healthcare. *See* Agreement § IV(A)-(E) and Implementation Plan.

21  Defendants will have new systems and policies to identify people who have requested

22  Alternative Formats, will maintain this information in a centralized database, will ensure the

23  exchange of this data among different components of the Medi-Cal system, will send timely and

24  accessible notices in an individual's requested Alternative Format, will provide guidance to

25  counties and managed care plans, and will monitor these entities to ensure that Blind and

26  visually-impaired Medi-Cal consumers are provided Effective Communication. *Id*. Furthermore,

27  the Agreement does not release Settlement Class Members' potential claims for monetary

28  damages. *See* Agreement § IX.

1    The proposed Settlement Class meets all requirements of Rule 23(a) and Rule 23(b)(2)

2    and should be certified.

3    **B.     The Court Should Preliminarily Approve the Parties' Agreement**

4    In making a final fairness determination, Rule 23 requires courts to consider: (1) whether

5    the class was adequately represented; (2) whether the proposed settlement was negotiated at

6    arm's length; (3) whether the relief provided for the class is adequate, taking into account the

7    costs, risks, and delay of trial and appeal, the terms of any proposed award of attorneys' fees, and

8    other factors; and (4) whether the proposal treats class members equitably relative to one

9    another. Fed. R. Civ. P. 23(e)(2); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir.

10   2012) (enumerating the factors which a court should consider in determining whether the

11   substance of a settlement is "fair, adequate, and free from collusion"). Courts cannot, however,

12   fully assess such factors until after the final approval hearing; thus, "a full fairness analysis is

13   unnecessary at this stage." *Uschold*, 333 F.R.D. at 169 (internal quotation marks and citation

14   omitted). Preliminary approval is appropriate if "the proposed settlement appears to be the

15   product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not

16   improperly grant preferential treatment to class representatives or segments of the class, and falls

17   within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078,

18   1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted). At the preliminary

19   approval stage, the Parties must "show that the court will likely be able to" approve their

20   proposed settlement under these new Rule 23(e)(2) factors. Fed. R. Civ. P. 23(e)(1)(B)*; see also*

21   *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019 WL 1411510 at *4 (N.D.

22   Cal. Mar. 28, 2019).

23        1.     Plaintiffs and their counsel have adequately represented the Settlement

24               Class.

25   In determining whether a class has been adequately represented, courts consider the same

26   "adequacy of representation" questions that are relevant to class certification. *See MyFord*

27   *Touch*, 2019 WL 1411510 at *8 (relying on findings from class certification that the named

28   plaintiffs had no conflicts of interest with and could adequately represent the other class

30

1   members to find that the proposed settlement adequately represented the class); *O'Connor v.*

2   *Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2019 WL 1437101, at *6 (N.D. Cal. Mar. 29, 2019)

3   (holding that named plaintiffs and counsel did not have any conflicts of interest with and would

4   prosecute vigorously on behalf of unnamed class members because all members would be "part

5   of the class as originally alleged."). As discussed above in § IV.A.4, this requirement is satisfied.

6   First, Plaintiffs' counsel engaged in extensive investigation and advocacy prior to filing suit.

7   Elliott Decl. ¶¶ 3-4. Second, Plaintiffs' counsel and Plaintiffs vigorously prosecuted the action,

8   seeking to litigate this matter on a dual track with settlement negotiations and dedicating

9   significant time and effort to settlement efforts through over a dozen mediation sessions and

10  settlement conferences when that request was denied. *See* ECF No. 38; Elliott Decl. ¶¶ 4-12.

11  Third, Plaintiffs have been engaged and involved in this matter to represent the interests of the

12  class, including by participating in many settlement conferences and meetings and providing

13  input throughout the Parties' settlement negotiations. Decl. Mendelsohn ¶¶ 8-10; Decl. Hinkle

14  ¶¶ 8-10; Decl. Gassaway ¶¶ 7-19. Thus, the Court should find that this Rule 23(e)(2) factor

15  weighs in favor of approval.

16          2.     The Parties' Agreement is the product of arms-length negotiations.

17         The Parties' proposed Agreement is the product of over five years of arms-length

18  negotiations, including eight settlement conferences before Judge Jacqueline Scott Corley,

19  numerous settlement meetings between the parties, and many written proposals exchanged back

20  and forth. ECF Nos. 35, 39, 48, 57-68; Elliott Decl. ¶¶ 4-13. While no presumption of fairness

21  attaches to settlements achieved through arms-length negotiations, *see Roes, 1-2 v. SFBSC*

22  *Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019) (holding that the lower district court had

23  abused its discretion in failing apply a heightened inquiry of fairness by erroneously presuming a

24  settlement produced by arms-length negotiations to be fair and reasonable), such negotiations do

25  weigh in favor of approval.[14] Fed. R. Civ. P. 23(e)(2)(B). And, as the Advisory Committee has

26

27  _____

    [14] The considerations encompassed by the revised Rule 23(e)(b)(2) overlap with those

28  contemplated by "certain *Hanlon* factors, such as the non-collusive nature of negotiations, the
    extent of discovery completed, and the stage of proceedings." *In re Extreme Networks, Inc. Sec.*

1    recognized, "the involvement of a neutral or court-affiliated mediator or facilitator . . . may bear

2    on whether [negotiations] were conducted in a manner that would protect and further the class

3    interests." Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2). Where, as

4    here, an agreement is the product of "serious, informed, non-collusive negotiations" conducted

5    by experienced counsel over an "extended period of time," courts routinely find that preliminary

6    approval is appropriate. *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079–80

7    (finding a settlement to be the product of arms-length negotiations where such comprehensive

8    negotiation occurred throughout a calendar year). Furthermore, Plaintiffs' counsel did not

9    negotiate attorneys' fees and costs until agreement was reached on the remainder of the

10   settlement. Elliott Decl. ¶¶ 13, 43. Another indicium of appropriateness of the arm's length

11   negotiations is the lack of "clear sailing" agreements. *See, e.g.*, *In re Extreme Networks, Inc. Sec.*

12   *Litig.*, No. 15-CV-04883-BLF, 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019) (scrutinizing

13   pre-class certification settlement signs of collusion including when and how attorney's fees are

14   negotiated).

15         The Court should therefore find that this Rule 23(e)(2) factor weighs in favor of approval.

16         3.    The Parties' Agreement will provide exceptional relief to Plaintiffs and the

17               Settlement Class

18         The third factor requires courts to consider whether "the relief provided for the class is

19   adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the

20   effectiveness of any proposed method of distributing relief to the class, including the method of

21   processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

22   including timing of payments; and (iv) any agreement required to be identified under Rule

23   23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). In determining whether the Agreement "falls within the

24   range of possible approval," the Court must focus on "substantive fairness and adequacy" and

25   "consider plaintiffs' expected recovery balanced against the value of the settlement

26   offer." *See Tableware*, 484 F. Supp. 2d at 1080.

27

28   *Litig.*, No. 15-CV-04883-BLF, 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019) (citing
     *Hanlon*, 150 F.3d at 1026).

32

Here, the settlement fully addresses the issues that led Plaintiffs to file this lawsuit. Defendants rely on printed materials to provide Medi-Cal applicants and recipients with critical and time-sensitive information about their health benefits. Compl. ¶ 3. Plaintiffs are Blind Medi-Cal consumers who cannot read these documents unless provided in an Alternative Format. *Id.* at ¶ 4. Plaintiffs allege that they repeatedly requested that Defendants provide these printed materials in an Alternative Format, but Defendants failed to do so consistently and timely, if at all. *Id.* at ¶¶ 4, 13-16, 74-112. Plaintiffs further allege that this was because Defendants did not have any effective procedure, practice, or custom of providing application forms, instructions, notices, informational materials, fair hearing related materials, or other printed materials to Blind individuals in formats that were accessible to them, even if the individual was known to Defendants to be Blind. *Id.* at ¶ 64.

The Agreement and Implementation Plan address all these issues. Medi-Cal applicants and recipients who are Blind or visually-impaired will be able to request and receive Written Materials in their preferred Alternative Format across all components of the Medi-Cal system. Agreement § IV; Implementation Plan. Defendants will have new systems and policies to identify people who have requested Alternative Formats, to maintain this information in a centralized database, to exchange this data among different components of the Medi-Cal system, to send timely and accessible notices in the requested Alternative Format, to provide guidance to counties and managed care plans, and to monitor these entities to ensure that Blind and visually-impaired Medi-Cal consumers are provided Effective Communication. *Id.*

> a. *The potential costs, risks, and delays associated with trial and appeal weigh in favor of approval.*

In considering "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon*, 150 F.3d at 1026. Further, in determining whether the Agreement "falls within the range of possible approval," the Court focuses on the expected outcome balanced against the value of the settlement. *Uschold*, 333 F.R.D. at 171. "[I]t is well-

1   settled law that a proposed settlement may be acceptable even though it amounts only to a

2   fraction of the potential recovery that might be available to class members at trial." *Nat'l Rural*

3   *Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

4          In deciding whether to agree to this settlement, Plaintiffs were required to, and did,

5   consider the possibility that Defendants would prevail in the litigation, and the case would end

6   with no benefits to the class. DHCS has argued that it is not required to have a system that

7   identifies and tracks Medi-Cal applicants and beneficiaries to ensure they are consistently sent

8   timely and accessible notices in the requested Alternative Format. Elliott Decl. ¶ 29. DHCS has

9   further argued that it is not responsible for and cannot direct the actions of other entities that

10  participate in the delivery of Medi-Cal services, including other government agencies, providers,

11  and vendors. *Id.*

12         On the other hand, Plaintiffs contend that under the ADA and its implementing

13  regulations, Defendants are required to ensure that the benefits of the Medi-Cal program are

14  available to Blind and visually impaired Medi-Cal consumers and that their operations, as well as

15  those of their contractors and other entities involved in the delivery of Medi-Cal services, do not

16  discriminate on the basis of disability. Thus, Plaintiffs contend that Defendants are responsible

17  for the provision of Written Materials in Alternative Formats to Blind and visually impaired

18  Medi-Cal consumers and applicants across the Medi-Cal system. Plaintiffs further contend that

19  they amassed extensive evidence demonstrating the failure to provide Medi-Cal consumers with

20  Effective Communication. Plaintiffs were also prepared to show that class certification was

21  appropriate.

22         Nevertheless, there was no guarantee that Plaintiffs would prevail, and any litigated result

23  would require significant time and resources for the Court to resolve these disputes. Plaintiffs

24  considered the fact that the settlement provided benefits—such as the opportunity to review and

25  comment on relevant external communications and participate in user testing and feedback —

26  that would enhance the prospective relief. Elliott Decl. ¶ 30; Agreement § IV.E & Exhibit B.

27  This and other relief included in the Agreement might not otherwise be available from a court,

28  even if Plaintiffs were to prevail.

1    Based on these factors, Plaintiffs made a considered decision that this settlement is in the

2    best interests of the Settlement Class and deserves judicial approval. Elliott Decl. ¶ 30.

3              *b.    The terms of the Parties' proposed attorneys' fee award also weigh*
                     *in favor of approval.*

4    The statutes at issue in this action allow prevailing plaintiffs to recover their reasonable

5    fees and costs. *See* 42 U.S.C. § 12205 (ADA); 29 U.S.C. § 794a(b) (Section 504). In the context

6    of a class settlement, "courts have an independent obligation to ensure that" any award of fees

7    and costs "is reasonable, even if the parties have already agreed to an amount."[15] *In re Bluetooth*

8    *Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

9    Subject to this Court's approval, Defendants have agreed to pay Plaintiffs' counsel

10   $1,550,000 to cover all attorneys' fees and costs, including those incurred for monitoring

11   implementation of the Agreement. Agreement § VIII; Elliott Decl. ¶ 45. This term was

12   negotiated after all substantive settlement terms pertaining to injunctive relief had been resolved.

13   Elliott Decl. ¶¶ 13, 43.

14   Plaintiffs' lodestar, calculated by multiplying the number of hours Plaintiffs' counsel

15   reasonably expended on the litigation by their reasonable hourly rate, is the presumptively

16   reasonable attorneys' fee for settlement purposes. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S.

17   542, 552-53 (2010) (following the lodestar method because it includes all relevant factors for a

18   finding of reasonableness and ensures that meritorious civil rights plaintiffs can retain competent

19   attorneys); *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *amended*, 108 F.3d

20   981 (9th Cir. 1997) (vacating a fee award for failure to apply the lodestar method as proper

21   custom for reasonable fee determination). Moreover, "lawyers are not likely to spend

22   unnecessary time on contingency fee cases" such as this one "in the hope of inflating their fees";

23   thus,"[b]y and large, the court should defer to the winning lawyer's professional judgment as to

24   how much time he was required to spend on the case[.]" *Moreno v. City of Sacramento*, 534 F.3d

25

26

27   [15] While such awards are not formally approved until the final approval hearing, class counsel
     must "include information about the fees they intend to request and their lodestar calculation in

28   their motion for preliminary approval." See Northern District Proc. Guidance for Class Action
     Sett. ¶ 6.

*Hinkle, et al. v. Baass et al.*, Case No. 3:18-cv-06430-MMC
Memorandum of Point and Auth. iso Joint Motion for Preliminary Approval of Class Settlement

1    1106, 1112 (9th Cir. 2008).

2        Plaintiffs' Counsel devoted a total of 2932.8 hours to this action through January 31,

3    2023. Elliott Decl. ¶ 43, Ex. 3 (Plaintiffs' Billing Summary). In the interest of settlement,

4    Plaintiffs initially wrote off 151.4 hours. Elliott Decl. ¶ 50. Based on 2023 rates for Plaintiffs'

5    counsel[16]—this amounted to a lodestar of $1,879,199. Elliott Decl. ¶¶ 43, 51; Bichell Decl. ¶ 34;

6    Yee Decl. ¶ 23. Plaintiffs also requested $3,011.96 in reasonable costs and expenses incurred

7    through June 30, 2023. Elliott Decl. ¶ 43. Plaintiffs further requested $87,495 based on estimated

8    work regarding Court approval of the settlement, and $249,850 for estimated work related to

9    monitoring, totaling $2,219,556. *Id.* at ¶ 44.

10       Following negotiations with Defendants, the parties agreed upon a proposed payment of

11   $1,550,000 for Plaintiffs' attorney's fees and costs, inclusive of work related to Court approval

12   of the settlement and monitoring. Where, as here, Plaintiffs have achieved an excellent result on

13   behalf of the proposed Settlement Class—as discussed in § II.B, above—that fact weighs heavily

14   in favor of finding that their fee award is reasonable. *See Vizcaino v. Microsoft Corp.*, 142 F.

15   Supp. 2d 1299, 1304 (W.D. Wash. 2001), *aff'd*, 290 F.3d 1043 (9th Cir. 2002) (holding that the

16   public benefit for workers nationwide as a result of the class settlement supported a finding of

17   reasonable attorneys' fees); see also *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (stating that

18   the "most critical factor" to the reasonableness of an attorney fee award is "the degree of success

19   obtained"). Thus, the Court should find that the terms of the Parties' proposed fee award weigh

20   in favor of approval.

21           4.    The Parties' Agreement treats all Settlement Class Members equitably.

22       The Court must next examine whether the Agreement "provides preferential treatment to

23   any class member." *Uschold*, 333 F.R.D. at 170 (citation omitted). Here, all Settlement Class

24   Members, both named and unnamed, will be treated equitably and will receive the same benefits

25   in the form of injunctive relief. Agreement § IV. Furthermore, Settlement Class Members will

26

27   ────────────────────────
[16] Plaintiffs' counsel's rates are regularly approved in the Northern District of California. Elliott
28   Decl. ¶ 53; Bichell Decl. ¶ 36; *see also* Yee Decl. ¶ 26 (DREDF 2024 rates accepted by Office of
     the Independent Arbitrator).

*Hinkle, et al. v. Baass et al.*, Case No. 3:18-cv-06430-MMC
Memorandum of Point and Auth. iso Joint Motion for Preliminary Approval of Class Settlement

1    not release any potential claims for monetary damages. *Id*. at § IX. The Plaintiffs will not receive

2    an incentive payment or any benefits that are not afforded to non-party Settlement Class

3    Members. *See* Agreement.

      **C.**    **The Parties' Proposed Form of Notice Should Be Approved**

5          Notice to a settlement class certified under Rule 23(b)(2) is within the Court's discretion.

6    Fed. R. Civ. P. 23(c)(2)(a), (e)(1). Notice provided under Rule 23(e) must "generally describe[ ]

7    the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

8    investigate and to come forward and be heard." *Lane*, 696 F.3d at 826 (quoting *Rodriguez v. W.*

9    *Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)). The Parties' proposed form of notice meets

10   this standard.

11         Here, the proposed class notice, attached as Exhibit C to the Agreement (hereinafter

12   "Notice"), is written using plain language. Elliott Decl. ¶ 39; Agreement Ex. C. The Notice will

13   be available in English, Spanish and other threshold languages as defined by paragraph (3) of

14   subdivision (a) of Section 1810.410 of Title 9 of the California Code of Regulations. Agreement

15   § X(B). Upon request, the Notice will be available in Alternative Formats, unless DHCS

16   reasonably determines that providing the Notice in the requested format is unduly burdensome

17   pursuant to 28 C.F.R. § 35.164. *Id.*

18         Within 60 days of the Court's granting of Preliminary Approval of the Settlement

19   Agreement, the Parties will provide notice to the Settlement Class by posting the Notice on the

20   websites of the California Council of the Blind, DHCS, Disability Rights California, Disability

21   Rights Education and Defense Fund, and Disability Rights Advocates, along with information as

22   to how to request a copy of the notice. Elliott Decl. ¶ 40-41; Agreement § X.B. Additionally,

23   DHCS will include a short form of the Notice in its next quarterly mailing after the Court grants

24   Preliminary Approval of the Settlement Agreement. Elliott Decl. ¶ 40-41; Agreement § X.B.

25         The Notice also informs Settlement Class Members that they can file objections in

26   writing or by filling out an online form on Disability Rights California's website or by calling a

27   dedicated line at Disability Rights California. Elliott Decl. ¶ 42; Agreement Ex. C. Settlement

28   Class Members will be provided more than thirty-five days to opt out or object to the Agreement.

*Id.* The Parties' proposed Notice satisfies Rule 23(c) because it is easy to comprehend and provides sufficient information to alert Settlement Class Members as to their rights.

### D.    The Agreement meets the Northern District's Guidance

The Northern District of California has issued procedural guidance for class action settlements. Below, the Parties address those guidelines that are applicable in this matter and not already covered herein.

First, the claims released in the Agreement differ from the claims in Plaintiffs' Complaint in that the Complaint did not name DHCS's current or former directors, officers, administrators, agents, employees, divisions, branches, units, contractors, successors, and assigns, and all other individuals and entities legally acting on behalf of Defendants. This is appropriate because the systemic actions DHCS has agreed to will be implemented across all components of the Medi-Cal system and because the release is temporally limited to claims arising before the Effective Date. Agreement § IX.

Second, Defendants will provide notice to the U.S. Department of Justice and the California Attorney General within ten days of filing this motion, as required by the Class Action Fairness Act, 28 U.S.C. § 1715(b).

Third, the Parties are not aware of any other cases that will be affected by the settlement.

Finally, the Parties are aware that *Rafferty et al. v. Proud et al.*, No. 13-CV-1410-TPG (SDNY), is a comparable class settlement from 2015. In that case, four individuals filed a case on behalf of themselves and on behalf of a class of similarly situated individuals who are blind and who are applicants for or recipients of the Supplemental Nutrition Assistance Program and Medicaid benefits residing in New York City. Rafferty, Stip. and Order of Settlement, Dkt. No. 62, at 1-2. The plaintiffs alleged that state and local agencies and officials had failed to provide written materials and information about those public benefit programs in alterative formats to blind applicants and recipients. *Id.* at 2. Under the settlement agreement, the defendants agreed to make all applications and publications available in alternative formats, provide notice of the availability of alternative formats to applicants and recipients of those public benefits programs, ensure that its data systems were able to track alternative format requests, allow beneficiaries to

38

*Hinkle, et al. v. Baass et al.*, Case No. 3:18-cv-06430-MMC
Memorandum of Point and Auth. iso Joint Motion for Preliminary Approval of Class Settlement

1   recertify by telephone, notify personnel of the terms of the settlement, train public-facing

2   employees regarding their responsibilities pertaining to blind individuals, provide regular

3   progress reports to class counsel regarding provision of alternative formats to blind individuals,

4   and meet and confer with class counsel regarding new technologies for providing alternative

5   formats to blind individuals. *Id.* at 6-19. Below is a summary of the information required by the

6   Northern District's guidelines pertaining to comparable cases in chart form:

| Claims being released | Claims under of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §§ 701-797(b); the Due Process Clause of the Fourteenth Amendment to the United States Constitution, U.S. CONST. amend. XIV,§ 1; the New York State Human Rights Law, N.YEXEC. LAW§§ 291 et seq.; the New York City Human Rights Law, N.Y.C. ADMIN. CODE§ 8-107; and state regulations, 18 N.Y.C.R.R. § 303.1; against New York City and State agencies and officials for allegedly failing to provide written materials and information about SNAP and Medicaid eligibility in accessible and effective alternative formats to blind applicants and recipients. *Rafferty*, Stip. And Order of Class Cert., Dkt. No. 33 at 2. |
| --- | --- |
| Total number of class members | More than 800. *Rafferty*, Stip. and Order of Class Cert., Dkt. No. 33, ¶ 3. |
| Total number of class members to whom | Unknown. |

39

| | |
|---|---|
| notice was sent | |
| Methods of notice | Posting on state agency websites; posting in client waiting areas at state offices, including all SNAP and Medicaid offices; mailing to individually identified class members; posting on plaintiffs' counsel's websites; emailing to disability rights and legal aid organizations. *Rafferty*, Order pursuant to FRCP 23(e), Dkt. No. 54-1, ¶¶ 3-7; Bass Decl. iso Class Action Order of Settlement, Dkt. No. 59, ¶ 15. |
| Number and percentage of claim forms submitted | Not applicable. |
| Average recovery per class member or claimant | Not applicable. |
| Amounts distributed to cy pres recipients | Not applicable. |
| Administrative costs | Not applicable. |
| Attorneys' fees and costs | $300,000. *Rafferty*, Stip. and Order of Settlement for Fees and Costs, Dkt. No. 63. |
| Total exposure if the plaintiffs had prevailed on every claim | No monetary relief was sought. *Rafferty,* Bass Decl. iso Class Action Order of Settlement, Dkt. No. 59, ¶56. |
| Benefit conferred on class where injunctive and/or other non-monetary relief has been obtained | "Plaintiffs have secured a landmark settlement on behalf of the Class Members that will ensure meaningful access to the complex public benefits systems at issue and which, through proper implementation, should become a model for public benefits systems throughout the State and for the |

| | |
|---|---|
| | Nation." *Rafferty,* Bass Decl. iso Class Action Order of Settlement, Dkt. No. 59, ¶55. Additionally, the "Settlement enables members of the plaintiff class to obtain prompt and comprehensive relief through a settlement that establishes a systematic, accountable program of alternative format conversion designed to render complex Food Stamps and Medicaid documents accessible to low-income individuals who are blind and seriously visually impaired, and who depend on these vital benefits for their daily subsistence." *Id.* at Para. 63. |

## V.    CONCLUSION

The settlement of this litigation achieves important benefits for Plaintiffs and all members of the proposed Settlement Class. Plaintiffs respectfully request that the Court enter the attached proposed order preliminarily approving the Agreement, preliminarily certifying the proposed class, and approving the proposed notice form and notice plan.

Date: <u>November 8, 2024</u>

Respectfully Submitted,

DISABILITY RIGHTS CALIFORNIA

<u>*/s/ Autumn M. Elliott*</u>
AUTUMN M. ELLIOTT
*Attorneys for Plaintiffs*

1  Date: <u>November 8, 2024</u>          OFFICE OF THE ATTORNEY GENERAL

2                                         */s/ Dane C. Barca*
                                          DANE C. BARCA
3                                         *Attorneys for Defendants Michelle Baass, Director*
                                          *of the California Department of Health Care*
4                                         *Services (DHCS) and DHCS*

5

6  Date: <u>November 8, 2024</u>          MOSCONE EMBLIDGE & RUBENS LLP

7                                         */s/ G. Scott Emblidge*
                                          G. SCOTT EMBLIDGE
8                                         *Attorney for Defendants Contra Costa County,*
                                          *County of Alameda, and County of San Diego*
9

10

11                        **ATTORNEY ATTESTATION**

12         I hereby attest, pursuant to Local Rule 5-1(i)(3), that I obtained the concurrence in the

13  filing of this document from the signatories indicated by the conformed (/s/).

14                                         */s/ Autumn M. Elliott*
                                          AUTUMN M. ELLIOTT
15

16

17

18

19

20

21

22

23

24

25

26

27

28